[Civ. No. 2219.   Second Appellate District.—February 24, 1917.]

B. L. CHAMBERS et al., Respondents, v. BELMORE LAND & WATER COMPANY (a Corporation), Appellant.

LEASE—ACTION FOR BREACH—PROXIMATE CAUSE OF DAMAGE.—In this action to recover damages for the breach of the terms of a contract of lease, it is held that the proximate cause of the damage sustained by the plaintiff was the failure of the defendant to construct headgates, as provided by the lease, to enable the plaintiff to irrigate the land demised.

ID.—PREVENTION OF DAMAGE—RULE INAPPLICABLE.—Where the failure to construct such headgates caused a failure of a large portion of the lessees' crop, they cannot be denied recovery on the ground that they should have constructed the headgates themselves, where the cost of such construction would have been upward of two thousand dollars.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—A new trial will not be granted on the ground of newly discovered evidence which was almost wholly cumulative, and particularly where it appeared that by the exercise of reasonable diligence the unsuccessful party could have procured such evidence at the trial.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

Barstow, Beach & Rohe, for Appellant.

Drew Pruitt, and H. G. Redwine, for Respondents.

SHAW, J.—The subject of this action is defendant's alleged liability for damages due to its breach of the terms of a contract of lease made to plaintiffs. Upon trial judgment was entered in favor of plaintiffs, from which, and an order denying its motion for a new trial, defendant appeals.

The evidence tended to establish the following facts: Defendant was the owner of a large tract of land in Fresno County, which it leased for the growing of grain thereon, to plaintiffs, who agreed to pay defendant as rental therefor one-fifth of the crop grown thereon during the season of 1912. The land was located in an arid zone, by reason of which fact

it was necessary in the growing of crops thereon to irrigate the same.    The source of supply of water for such irrigation was two streams known as Silver Creek and Panoche Creek, having their sources in the mountains, and which as a rule during the rain and flood seasons afforded a supply of water, which, however, varied from year to year, depending upon the precipitation of moisture upon the watershed tributary to said creeks.    In order to utilize the waters of the creeks for irrigating the land, it was necessary to construct a dam across the streams whereby to divert the water therefrom into a main canal, by means whereof and lateral ditches connected with said main canal it was distributed over the land.    The lease contained provisions as follows: ''It is agreed by party of the first part (defendant), that he shall construct a dam across the Silver Creek and Panoche Creek on or before December 20th, 1911, and to place headgates at different points of turnouts.    It is agreed by party of the second part (plaintiffs), that he shall use all water from Silver Creek and Panoche Creek diligently, which means, as long as water can be had in heads of one hundred inches or more, and that it shall be turned either upon the land farmed by said second party, or upon other land owned by party of the first part.    It is further agreed on part of party of the second part (plaintiffs), that he shall keep said dam and gates in repairs and that he will attend said dam in person or by reliable party during heavy rains.''    Plaintiffs entered upon the land and in the winter of 1911 and 1912 plowed and prepared about eight hundred acres thereof for grain, which they seeded to barley, and also reconstructed and cleaned the lateral ditches extending throughout the tract for use in irrigating the grain.    Defendant constructed the dam across said streams, completing the same some time in February and prior to there being sufficient rainfall to affect the flow of water in the creeks, but at all times neglected and refused to construct the headgates which it agreed to install in the main canal for the purpose of diverting water therefrom into the lateral ditches, the cost of which would have been about two thousand dollars.    It appears there was little rainfall upon the watershed tributary to said creeks during the winter, but that about March 1st there was a storm as a result of which the creeks were filled with water for a period of about fifty hours, during which time plaintiffs, as best they could without the headgates, and

with a sufficient force of men and by means of dirt dams constructed in the main canal, irrigated about one hundred acres of the barley which they had planted. It further appears that had defendant complied with its agreement to put in the headgates in the main canal as promised, the flow of waters in said creek during said fifty hours could have been used to properly irrigate at least four hundred acres of said barley, and that for want of the headgates it was impossible for plaintiffs to control the water and conduct it upon the land, as a result of which at least three-fourths of the water which might have been used for irrigation with the headgates installed was lost and dissipated. The conclusion of the court was that, notwithstanding the light seasonal rainfall, the flow of water in said creeks, had headgates been put in as agreed upon, would have enabled plaintiffs to irrigate four hundred acres of the barley instead of one hundred, and that the one hundred acres produced fifteen sacks of 110 pounds each per acre, which, after paying the rent reserved in said lease, gave plaintiffs twelve sacks of barley per acre; and that said three hundred acres additional, had they been irrigated, would have produced a like number of sacks per acre, the market value of which, after paying all expenses connected therewith, would have been $5,078.55.

While admitting its breach of the contract to install the headgates, appellant insists that such breach of the contract was not the proximate cause of the damage found to have been sustained by plaintiffs. Says appellant: "The record shows there were many steps between the headgates and the actual securing of a crop of barley." It appears, however, that plaintiffs, relying upon defendant's promise, took every step required of them in the plowing, seeding, use of the water available for irrigation, and growing of a crop upon the land, and that owing to the fact that the flow of water in said streams during the season of 1912 continued for only fifty hours, it was impossible by the use of dirt dams to irrigate more than one hundred acres of land, whereas with the headgates installed, which would have permitted control of the flow of water, four hundred acres could have been irrigated during said time. Nor is there any ground for claiming that the lack of irrigation of the crop was due to plaintiffs' failure to care for the irrigating system, since there is ample evidence to the contrary. The situation is explained by the testimony

of one of plaintiffs' witnesses who, in referring to extra work done, stated: "If we had had the headgates and the turnouts we would not need to have done this extra work. We made some of the dams before the water started and some afterward; we had one in when the water first came, and we had to go up the ditch and turn it out into No. 6, and we had to turn it also to get it in No. 7. We had to go to the dam (a distance of four miles) and turn the water out of the main canal, go back down, put this mud dam in, and go up to the canal again and turn the water in there again and let it come down. A large part of the time during that fifty hours the water ran we had to turn it down the creek in order to put in the mud dams." In our opinion, it is apparent from the evidence that, whatever might have been done in preceding years when for a long period of time the streams afforded a continuous flow of flood waters, the flow of water therein for a period of fifty hours only during the month of March, 1912, was insufficient to irrigate more than one hundred acres of the land without the headgates called for by the contract; and that had these gates been installed, the flow of water, as found by the court, was adequate to irrigate four hundred acres. Hence the proximate cause of failure of the crop on the three hundred acres of land was want of irrigation, due directly and solely to defendant's neglect to install headgates in the main canal by means of which the water diverted from the creeks could, with the force of men employed, have been controlled, and, through the lateral ditches constructed therefor by plaintiffs, properly distributed over the land.

Conceding the damage sustained to have been due to defendant's breach of the contract, appellant nevertheless insists that plaintiffs should themselves have constructed and installed the headgates; in support of which contention it cites the case of *Mabb* v. *Stewart,* 147 Cal. 413, [81 Pac. 1073], to the effect that in a case of this character, where the party injured could with *reasonable diligence* and *slight expense* have prevented the injury, the measure of damage sustained is limited to the reasonable cost of doing that which would have prevented the injury. To the same effect is 1 Sutherland on Damages, third edition, section 88, where it is said: "Where the damages that would otherwise result from a wrong of this sort can be reduced by reasonable diligence and at slight expense upon the part of the party injured, the measure of damages in case the

injured party willfully and negligently fails to use the diligence or incur the expense, is not the serious consequences which actually and naturally result from the deprivation, but is limited to the reasonable expense which would be necessary to prevent further loss.'' In the Mabb case plaintiffs could have prevented damage to the extent of nearly three thousand dollars by the payment of thirty dollars wrongfully exacted by the defendant therein as a condition of supplying water for irrigation. While applicable to the facts in that case, the rule has no application to the circumstances in the case at bar. Plaintiffs had the right to assume that defendant would, prior to the need therefor, construct the headgates in accordance with its agreement. Moreover, if there was a slight rainfall only, the headgates would have been useless and of no avail to plaintiffs. The cost was not slight, but, as shown by the evidence, the expense of installing the same would have been some two thousand dollars. The conditions existing and cost of the improvement render the rule to which we have referred inapplicable to the case.

One of the grounds for a new trial was newly discovered evidence, in support of which defendant filed several affidavits. An examination of these not only shows that the alleged newly discovered evidence was touching issues presented by the pleadings, but almost wholly cumulative. Moreover, it appears that defendant by the exercise of reasonable diligence could have obtained the testimony of such witnesses for use at the trial. The issues being tendered by the pleadings, it was the duty of defendant to make such preparation to meet the same as it deemed advisable; and the fact that it expected plaintiffs to produce said witnesses is no excuse for its failure to have produced them.

There is no merit in the contention that the court failed to find upon material issues; and the claim that there was a settlement between the parties which, as to plaintiffs' claim for damages, constituted an accord and satisfaction, is groundless.

The court in ascertaining and determining the damages sustained by plaintiffs followed the rule laid down in *Teller* v. *Bay and River Dredging Co.*, 151 Cal. 209, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942], which, conceding it to be in conflict with that of *Crow* v. *San Joaquin etc. Co.*, 130 Cal. 309, 314, [62 Pac. 562], cited by appellant, must

nevertheless, since it is later in. point of time, be deemed the law upon the subject.

In our opinion, the appeal is without merit, and the judgment and order are therefore affirmed.

Conrey, P. J., and James, J., concurred.