Hillsborough, }
June 4, 1929. }

HARRY NOVAK *v.* FONTAINE FURNITURE CO.

*Osgood & Osgood (Mr. Clinton S. Osgood orally)*, for the plaintiff.

*Herbert W. Rainie (by brief and orally)*, for the defendant.

MARBLE, J. The defendant contends that all liability for rent or for damages occasioned by the breach of the executory portion of the lease was terminated when the plaintiff resumed possession and control of the premises, since such conduct on the plaintiff's part effected a surrender of the lease by operation of law. The statement in the agreement of facts that there was no waiver is interpreted to mean that the plaintiff did not in fact accept the defendant's relin-

quishment of possession as a surrender. Where there is such acceptance the tenant is not liable for subsequent rent. *Davis* v. *George*, 67 N. H. 393, 399; *Elliott* v. *Aiken*, 45 N. H. 30, 36.

So far as notice to the defendant is concerned, the immediate institution of these proceedings was sufficient information of the plaintiff's insistence on liability for breach of covenant, even though it did not constitute notice of an intention to relet.

"The question whether, upon the tenant's abandonment of the premises, the landlord may lease them to another without thereby causing a surrender of the lease, and consequent termination of the tenant's liability for rent, is one of great practical interest, upon which the authorities are not in accord. There are a number of decisions to the effect that the landlord may so 'relet' to another and still hold the former tenant. By others it is regarded as necessary, in order that such reletting shall not effect a surrender, that the landlord, before making the new lease, inform the tenant that he is about to do so on the latter's account, that is, that the purpose is to reduce, but not necessarily to extinguish, the latter's liability for rent. By still another line of decisions it is adjudged that the reletting will terminate the liabilities under the previous lease, without any suggestion being made that a notice to the previous tenant would prevent this result." 2 Tiff., L. & T., 1338, 1339.

A few of the authorities supporting the first view are here cited: *Respini* v. *Porta*, 89 Cal. 464; *Marshall* v. *Company*, 184 Ill. 421; *Hickman* v. *Breadford*, 179 Ia. 827; *Banks* v. *Berliner*, 95 N. J. Law 267; *Bumiller* v. *Walker*, 95 Oh. St. 344; *Higgins* v. *Street*, 19 Okla. 45; *Bowen* v. *Clarke*, 22 Ore. 566; *Auer* v. *Penn*, 99 Pa. St. 370; *Martin* v. *Siegley*, 123 Wash. 683. Further citations on the subject will be found in 3 A. L. R. 1080; 58 A. L. R. 906; 16 R. C. L. 971; 35 C. J. 1093, 1094; 14 Mich. Law Rev. 82; 28 Harv. Law Rev. 329, 330; 14 Am. & Eng. Ann. Cas. 1088.

It is frequently said that the rule that the tenant's liability is terminated by the reletting as a matter of law, irrespective of notice, is supported by the better logic, but that strong practical considerations justify the adoption of the rule generally followed. Of course it cannot be denied that where the landlord relets he performs an act repugnant to the continuance of the former tenancy (*Felker* v. *Richardson*, 67 N. H. 509, 511), but this does not necessarily mean that his right to sue on the original undertaking is either illogical or out of harmony with the prevailing trend of the law in analogous situations.

In any case involving a breach of contract the plaintiff must make reasonable efforts to curtail his loss. *Lee* v. *Dow*, 71 N. H. 326, 327; *Hutt* v. *Hickey*, 67 N. H. 411, 418. Consequently it would seem just when a tenant has broken his agreement and repudiated the lease, to permit, if not to require, the landlord to make similar efforts to relet the premises. 40 A. L. R. 190–197; *Monger* v. *Lutterloh*, 195 N. C. 274, 279; *Bumiller* v. *Walker*, 95 Oh. St. 344, 356; *Martin* v. *Siegley*, 123 Wash. 683, 687.

Clarence Milton Updegraff in 38 Harv. Law Rev. 64, 79, declares that although the new tenancy is inconsistent with the old, it does not follow that it is also inconsistent with the contractual obligation in the lease. An analogy is found to exist in the ordinary case of assignment where both the lessee and his assignee are liable upon the covenant to pay rent. *Machinist* v. *Koorkanian*, 82 N. H. 249, 253, and cases cited. "'Nothing is better settled than that a surrender of the lease, or a release of the lessee, is not to be implied from the mere facts that the lessor assented to the assignment of the lease, and accepted rent from the assignee in possession.' *Rees* v. *Lowy*, 57 Minn. 381, 383." *La Société &c.* v. *Owen*, 79 N. H. 318, 319. "The tenure between the landlord and the lessee is at an end, but the contractual obligation continues. The same ideas . . . would permit it to be said that the landlord in re-letting the premises has consented to the termination of the tenure between him and the lessee because the new tenancy excludes the possibility of its continuance. It seems, however, that the tenancy created by the second lease is no more logically exclusive of the continued existence of the contractual obligation of the prior one than the retention of refused goods by a seller is exclusive of his right to recover for breach of a contract of sale. That the relationship of landlord and tenant and liability on the covenants in a lease are not dependent on each other is further supported by the consideration that, 'When there is a special covenant to pay the rent, the fact that the tenant never occupied the premises, or in any manner took possession of or asserted a right thereto, will not relieve him from liability upon his covenant, but he will be held to pay the rent for the full term.'" 38 Harv. Law Rev. 80, 81. See *Brown* v. *Cairns*, 107 Ia. 727, 730.

The rule that where a purchaser wrongfully refuses to accept goods the seller may elect to regard the sale at an end and sue for the breach of contract is recognized in this jurisdiction. *Bates St. Shirt Co.* v. *Place*, 76 N. H. 448, 452; *Lariviere* v. *Stratton*, 81 N. H. 17, 22. See also *Blanchard &c. Co.* v. *Company*, 80 N. H. 161.

"The same principle applies to these chattel interests which applies to goods, bargained for and not taken. The vendor is not obliged to abandon possession and throw them away. He may resell and credit the proceeds on the contract. This is for the benefit of the vendee, as in this case the re-letting was *pro tanto* for the benefit of the lessees." *Meyer* v. *Smith*, 33 Ark. 627, 632.

This court has recently held that where the purchaser of a motor truck has failed to make payments in accordance with the terms of the conditional sale, the seller may take back the truck and recover the balance due on the purchase price, after having credited the purchaser with the fair value of the truck or the amount obtained from a resale, according as the one exceeds the other. *Mercier* v. *Company, ante,* 59. A like credit would be allowed in the present case if the warehouse in question had a rental value and the parties had not agreed on the question of damages. *Monger* v. *Lutterloh,* 195 N. C. 274.

It is said in the *Mercier* case that repossession of the property and suit for the unpaid installments are not inharmonious and should not bar each other. Although notice was given the vendee that the truck would be resold (Briefs and Cases, No. 2252), the decision does not turn on that fact. Neither should recovery here depend on the defendant's knowledge that the premises were to be relet for his benefit. *Guy* v. *Gould,* 126 Kan. 25. "The real question in such cases is what is the intent of the landlord in taking possession?" *Ruple* v. *Taughenbaugh,* 72 Col. 171, 173. Notice of the proposed reletting is merely evidence on that issue.

Since in the present case it is agreed that the plaintiff did not waive his rights, or in other words that he did not as a matter of fact accept the defendant's abandonment of the warehouse as a surrender of the lease, it follows that the defendant's liability was not terminated by operation of law. The judgment is therefore affirmed.

*Exceptions overruled.*

All concurred.