[Civ. No. 8184. First Appellate District, Division One.—April 12, 1932.]

W. A. COULTER et al., Respondents, v. SAUSALITO BAY WATER COMPANY (a Corporation) et al., Defendants; MARY HICKMAN et al., Appellants.

484

George H. Harlan, Chris. B. Fox and L. W. Jefferson for Appellants.

tum Suden & tum Suden for Respondents.

THE COURT.—An action for the specific performance of a contract or in lieu thereof for damages.

On August 4, 1905, the plaintiffs W. A. and Harriet A. Coulter were the owners of lots 11, 12, 13 and 14 in block 10 in the town of Sausalito. They continued in such ownership until May 10, 1923, when they conveyed the same to plaintiff James Valentine Coulter. Said block is bounded by Valley, Third and Fourth Streets, and on

the date first mentioned the Sausalito Bay Water Company, a corporation, owned a portion of block 6, which was directly across Third Street from the Coulter property, and, among other parcels, lot F in block 21, and lot 60 in block 20, all as delineated upon the map of the town. This corporation was then operating a waterworks, which supplied a portion of the town with water. Upon lot F was a spring called the Yacht Club spring, from which the water was piped across an avenue known as Lower Crescent Avenue to a tank on said lot 60. From this tank ran a pipe to Main Street, where it entered one of the mains of the Water Company. The entire waterworks of this company was, with two exceptions, supplied by springs on the various lots mentioned and owned by it. These exceptions were two wells on said block 6 which, due to the low elevation, required pumps to raise the water therefrom into the tanks. In the summer of 1905 these wells were deepened and tunnels constructed therefrom, which tapped the underground sources of a well located on said lot 11 owned by plaintiffs, and which well had theretofore supplied sufficient water for their domestic uses, the irrigation of a garden, and also enabled them to sell some water to their neighbors. As a result the Water Company entered into an agreement in writing with plaintiff W. A. Coulter which is as follows:

"For and in consideration of the sum of one (1) dollar and other valuable consideration in hand paid by the undersigned W. A. Coulter to The Sausalito Bay Water Company, a corporation, the undersigned The Sausalito Bay Water Company, a corporation, does hereby covenant and agree to supply with such a quantity of pure and wholesome water lots numbered 11, 12, 13, 14 and 1 and 2, and 3 in block 10, Map No. 3, Sausalito Bay Land Co. Town of Sausalito, Marin County, California, as may be necessary for domestic use and for the irrigation of the grounds and garden; and likewise for the use of any private stable or houses which may be located upon said lots, without any charge, such water to be delivered upon said land through one single 1½ inch pipe; this covenant to run with the land and to inure to the benefit of said W. A. Coulter and his successors and assigns. It is furthermore covenanted and agreed on the part of the said W. A. Coulter that

he will not supply water to other persons or any other lot or lots of land either from any well now sunk upon said premises or any other well that may hereafter be driven thereon. Nor will he sell or deliver or permit any water supplied by the undersigned, The Sausalito Bay Water Company, to be used by any person not living upon or occupying said lots of land hereinabove described. Hereby the said W. A. Coulter furthermore releases the undersigned The Sausalito Bay Water Company from any claims for damages of any nature whatsoever alleged to have been sustained by him by reason of any tunnels or wells driven or bored or dug by the said Sausalito Bay Water Company, either under or alongside or in the neighborhood of the lots of land hereinabove described.

"In witness whereof the said W. A. Coulter has hereunto set his name, and The Sausalito Bay Water Company, a corporation, has caused its corporate name to be subscribed, and its corporate seal to be hereunto affixed by its president thereunto duly authorized by resolution of its board of directors this 4th day of August, 1905.

"W. A. COULTER,

"SAUSALITO BAY WATER COMPANY,

"By L. M. HICKMAN, president,

"By GEO. W. HOLLISTER, secretary."

This agreement was duly acknowledged by the parties and recorded on September 13, 1905.

Thereafter the Water Company connected its Valley Street main by means of a one and one-half inch pipe with a tank on the Coulter property, and continued to supply plaintiffs with water without charge until December 8, 1905, when its entire system with the lands mentioned was sold to the Sausalito Spring Water Company, a corporation, which continued to supply water to plaintiff in the same manner and in accordance with the contract. In the meantime the town of Sausalito commenced to supply water to its inhabitants. On February 27, 1915, the corporation last mentioned forfeited its charter for nonpayment of its franchise tax, and on September 27, 1924, by a decree of the superior court it was declared to be a dissolved corporation, and defendants Hickman, Costigan and Jefferson were appointed trustees for its stockholders and creditors. S. N. Dallas, named as a defendant, was later appointed

one of the trustees, but it appears that he died before this action was brought. The pipes placed by the company remained in the streets, but after 1915 no pumping was done from the wells mentioned, and plaintiffs continued to receive water which flowed by gravity from said Yacht Club spring on lot F into a tank on said lot 60 and thence into the Water Company's main on Main Street. This main extended therefrom southerly along West Street to Valley Street, and thence easterly on the latter street past the Coulter property, at which point, as stated, a pipe led therefrom to a tank on the property.

In 1915 the water-main on Valley Street was removed. Plaintiffs' tank was then connected with the water-main on Main Street by running a pipe from their property westerly on Valley Street and northerly on West Street. By this means they continued to receive water without cost until about November 21, 1925. On or about this date the mains on Main Street were removed. This resulted in depriving the plaintiffs of their source of supply, and they were thereafter compelled to obtain water from the town and pay regular rates therefor.

On March 6, 1926, the Sausalito Spring Water Company—which, as stated, had ceased to function as such—through its former directors as trustees, conveyed to defendant Kate Gleason all of its land mentioned above.

That both companies were public utilities is undisputed, and that they possessed a franchise to use the streets of the town is clear from the evidence (*South Pasadena* v. *South Pasadena Land etc. Co.*, 152 Cal. 579, 586 [93 Pac. 490]).

As a general rule a utility cannot lawfully transfer its system or property without securing an order from the Railroad Commission authorizing it to do so (Public Utilities Act, sec. 51), but no attack upon the validity of the transfers mentioned has been made by the parties here. Consequently we must presume that the law was obeyed and that the proceedings were regular (Code Civ. Proc., sec. 1963, subds. 20, 33).

The action was commenced in 1926. The amended complaint alleged in substance the above facts, among others, and prayed for a decree specifically enforcing the written contract dated August 4, 1905, and directing the defendants to continue to supply water thereunder in the quantities

as therein provided; further, that the court find that said agreement constituted a covenant running with the land of both plaintiffs and defendants, and that in lieu of specific performance, if such relief could not be had, plaintiffs be awarded damages against the defendants.

The complaint did not allege that the pipes connecting plaintiffs' property with the water supply were severed or disconnected by any act of the defendants or that they caused the severance. It was alleged that the same was done without plaintiffs' fault and over their objection, and that thereupon defendants ceased to furnish water as agreed, and that although demand had been made therefor they have failed and refused to do so.

Defendant Gleason by her answer alleged, among other matters, that the severance of the pipes as averred by plaintiffs was without fault on her part, and that the same was not done by her or by her consent, but by persons acting for the town of Sausalito; furthermore, that the easement claimed was extinguished by the destruction of the distributing mains of the Water Company; that she was an innocent purchaser of the lands conveyed by the company and that no easement was imposed thereon by the agreement mentioned; that plaintiffs' easement, if any, was confined to parts of lots 59 and 60 in block 20, and that plaintiffs' action was barred by the provisions of section 318 of the Code of Civil Procedure. She also filed a cross-complaint to quiet her title as against plaintiffs, alleging that they had no easement, right, title or interest therein or against the property described. The other defendants alleged substantially the same defenses, including the bar of the statute of limitations; and all the defendants by amendments to their pleadings alleged that they had no franchise or other permission by public authority to furnish water and were without means or ability to do so.

The trial court found the facts stated above and, in addition, against the denials, affirmative allegations and defenses contained in defendants' pleadings except that the latter have no franchise or permission of the public authorities to use the streets of the town for pipes or conduits, and are not public utilities.

Defendant Gleason was found to be the owner in fee simple of the lands described in her cross-complaint, but

that she purchased with notice, that her lands are subject to the covenants and easements provided in the contract mentioned, and that plaintiffs by reason of the facts have been damaged in the sum of $2,000. The court concluded from its findings that the contract mentioned "created a covenant or easement running with the lands of plaintiffs and defendants herein", and that plaintiffs were entitled to recover the above sum from defendant Gleason individually, and from the other defendants as trustees, stockholders and creditors of the Sausalito Spring Water Company; furthermore, that defendant Gleason take nothing by her cross-complaint.

The decree adjudged only that plaintiffs recover the sum of $2,000 from defendant Gleason and from the remaining appellants as trustees. There was no finding that the contract mentioned could not be specifically enforced, nor was the question expressly adjudicated except so far as the finding that defendants had no franchise or permission of the public authorities to lay pipes in the streets of Sausalito and that they are not public utilities would necessitate such conclusion. ■■■ However, this question was put in issue by the pleadings, and it is the rule that a judgment concludes the parties to an action and their privies not only as to all matters actually decided, but as to all matters belonging to the subject of controversy and properly within the scope of the issues which might have been decided (15 Cal. Jur., Judgments, sec. 189, p. 136; *Estate of Bell*, 153 Cal. 331 [95 Pac. 372]; *Southern Pacific Co.* v. *Edmunds*, 168 Cal. 415 [143 Pac. 597]; *Horton* v. *Goodenough*, 184 Cal. 451 [194 Pac. 34]).

Said defendant Gleason and the other defendants sued as trustees have appealed from the judgment, claiming that certain findings are unsupported; that a covenant running with the lands of the Water Company was not created by the contract, and that they committed no breach of duty for which a cause of action for damages arose.

■■■ The record discloses no evidence that any of the defendants removed from the streets the water-pipes by which plaintiffs were supplied or were in any way responsible for such removal; in fact, plaintiff W. A. Coulter testified that he knew as a fact that the removal was by certain contractors acting for the town. In this connection appel-

lants claim that such removal having been made in 1915, plaintiffs' action was barred by sections 318, 338 and 359 of the Code of Civil Procedure.

It was testified by one of the witnesses that the work and material necessary to make connection with the Water Company's pipe on Main Street in 1915 was furnished by plaintiff Coulter; and by a former employee of the company that this work was not done by it. Plaintiff Coulter was unable to recall the circumstances under which the new connection was made. It is the rule that the question of the credibility of the witnesses and the weight to be given their testimony is one for the trial court, which here concluded that the statute had not run. But whatever the weight to which this testimony is entitled it is clear from the evidence that the company in no way interfered with the use of its pipes or conduits by plaintiffs, and that the severance and removal was by third parties whose actions were not controlled by the company or by any of the defendants. It is also clear that there was no repudiation of the contract by the company at that time or any intention to violate it; nor, so far as shown, was there a demand that it make the necessary changes and repairs, or any refusal to do so or to further deliver under the contract. Even if it could be said that the company's omission might at the election of plaintiffs have been treated as a breach it does not follow that the statute commenced to run against the latter. As the rule is stated in Williston on Contracts, section 2027, "After a material breach by the defendant of a contract sounding in damages it may be supposed either that the wrong-doer wishes to continue performance or that he does not wish to do so. In the first case the injured party may always elect to continue performance if he so desires, and if thereafter another breach occurs an action may be maintained for entire damages suffered by the defendant's failure to complete the performance of the contract, or for recovery of the consideration paid by plaintiff on the theory of rescission and restitution, although more than the statutory period has elapsed since the first breach" (16 Cal. Jur., Limitation of Actions, sec. 110, p. 512; *Richter* v. *Union Land etc. Co.*, 129 Cal. 367 [62 Pac. 39]; *Ross* v. *Tabor*, 53 Cal. App. 605 [200 Pac. 971]). It has been held that one cannot be deprived of an incorporeal hereditament by the

act of strangers (*Smith* v. *Worn*, 93 Cal. 206 [28 Pac. 944]) ; and in view of all the circumstances the finding of the trial court that the action was not barred is, we think, fully sustained.

Nor is there any merit in the claim that any easement plaintiffs might have acquired over the lands of the Water Company was extinguished by the acts of the street contractors in 1915. As held in *Smith* v. *Worn, supra,* such was not the effect of these acts, nor did the fact that the plaintiffs renewed the connection waive performance by the company or otherwise limit plaintiffs' rights under the contract.

The same is true of the contention that, it having been shown that the company ceased to pump from the wells in block 6 and that the well on plaintiffs' property is now capable of producing the same amount of water as before the execution of the agreement of March 4, 1905, the consideration for this agreement failed. The agreement recited that a monetary and other valuable considerations had been received by the Water Company. If there be a consideration—which here is undisputed—the fact that it subsequently diminishes in value or becomes of no value cannot relieve a promisor from liability on his promise. (13 Cal. Jur., Contracts, sec. 224, p. 369, and cases there cited.)

It is further contended that plaintiffs suffered no damage by reason of defendants' failure to continue performance under the contract. This claim is based upon evidence that the well on the Coulter property is now capable of producing a sufficient supply of water, and that the evidence adduced in support of the alleged damage was speculative and the method of computing the same erroneous. As to the first contention, it will be sufficient to say that while it is the duty of one who knows that he is threatened with detriment to do all he reasonably can to prevent or minimize it, he is under no obligation to assume the burden of a contract which has been violated, or to incur more than slight expense in an attempt to prevent damage. (*Ash* v. *Soo Sing Lung,* 177 Cal. 356 [170 Pac. 843] ; *Sargent* v. *North End Water Co.,* 190 Cal. 512 [213 Pac. 33] ; *Chambers* v. *Belmore Land & Water Co.,* 33 Cal. App. 78 [164 Pac. 404].) The cost of restoring the original supply from the Coulter well is not shown, nor does it appear that this source since

the construction of the tunnels which drained the water into the wells of the water company would be certain to afford an adequate supply in the future. Under these circumstances it would be unreasonable to compel plaintiffs to do more than was done, namely, to connect their property with the mains established by the town.

A real estate dealer testified to the value of plaintiffs' property with and without the right to water free of charge. This witness was shown to be familiar with values in the neighborhood and with the cost of water service. The fact that the witness testified on cross-examination that the estimate of increased valuation with free water was based upon the charges for water made by the town did not detract from the competency or relevancy of his testimony, and the finding as to the damage was fully sustained.

Appellant trustees further urge that the Water Company having forfeited its charter, specific performance of the contract could not be had either as against it or against themselves as trustees. Conceding this, an action for damages would nevertheless lie against the trustees for a breach of the corporation's contract, the judgment being payable out of its assets if sufficient (Civ. Code, sec. 400; Stats. 1921, p. 574; 7 Cal. Jur., Corporations, secs. 650, 660, 662, pp. 167, 172, 175); and the fact that through no fault of the plaintiffs specific performance could not be decreed does not preclude monetary relief in a proper case. (23 Cal. Jur., Specific Performance, sec. 67, p. 511.)

There is likewise no merit in the claim that specific performance of the contract having become impossible by reason of the retirement of the Water Company from business and the destruction of its mains, further performance was thereby executed. Where a party has agreed without qualification to perform an act which is not in its nature impossible of performance he is not excused by the difficulty of performance, or by the fact that he becomes unable to perform, unless performance depends upon the existence of a given thing and such existence was assumed as the basis of the agreement. In such case performance is excused to the extent that the thing ceases to exist or turns out to be nonexistent (*Mineral Park Land Co.* v. *Howard,* 172 Cal. 289 [L. R. A. 1916F, 1, 156 Pac. 458]), but no fact has been shown which brings the present case within the above rule,

nor do the facts bring the case within the rules declared in *Southern Pacific Co.* v. *Spring Valley Water Co.*, 173 Cal. 291 [L. R. A. 1917E, 680, 159 Pac. 865].

 It is also claimed that the distributing system and water of the company were dedicated to public use, its rates until 1911 being subject to regulation by the authorities of the town and thereafter by the Railroad Commission (Const., art. XIV, sec. 1), and that consequently, the agreement being one to furnish plaintiffs with water without charge, was discriminatory and void.

Although the distribution and sale of water to the public is subject to regulation and control by the state, and this notwithstanding contracts for such sale have been entered into (*Leavitt* v. *Lassen Irr. Co.*, 157 Cal. 82 [29 L. R. A. (N. S.) 213, 106 Pac. 404]; *Limoneira* v. *Railroad Com.*, 174 Cal. 232 [162 Pac. 1033]; *Sutter-Butte Canal Co.* v. *Railroad Com.*, 202 Cal. 179 [259 Pac. 937]), nevertheless until public authority has intervened and modified prior contracts the same will be recognized and enforced. (*Southern Pacific Co.* v. *Spring Valley Water Co.*, *supra.*) And this is true although the system and water of the company have been dedicated to a public use. (*Fresno Canal Co.* v. *Park*, 129 Cal. 437 [62 Pac. 87].) In the present case there is no evidence of an attempt to fix or regulate the rates of the Water Company by any public authority, and so far as shown the contract was valid.

 Plaintiffs contend that the contract created a servitude upon the lands and water system of the company, that the same was a covenant running with the land, that its recordation was notice, and that defendant Gleason, the purchaser of the lands of the company, took subject to and was bound to perform the agreement.

Section 1460 of the Civil Code provides that "certain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor, and to vest in the assigns of the covenantee in the same manner as though they had personally entered into them. Such covenants are said to run with the land." According to section 1461 of title III, part I, division third, of the Civil Code, the only covenants which run with the land are those specified in that title and those which are incidental thereto; and section 1462 of the same

code provides: "Every covenant contained in the grant of an estate in real property which is made for the direct benefit of the property or some part of it then in existence runs with the land." It has been held that a covenant to furnish and pay for water to be used on land is not a grant of an estate within the last section, and does not run with the land although the instrument declares such to be the intention. (*Fresno Canal & Irrigation Co.* v. *Rowell*, 80 Cal. 114 [13 Am. St. Rep. 112, 22 Pac. 53]; *Fresno Canal & Irr. Co.* v. *Dunbar*, 80 Cal. 530 [22 Pac. 275].)

Section 1468 of the Civil Code, found in the same title, reads as follows: "A covenant made by the owner of land with the owner of other land to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, and is made by the covenantor expressly for his assigns or to the assigns of the covenantee, runs with both of such parcels."

Plaintiffs claim that the agreement in question was more than a personal covenant and created a covenant within the above section which ran with the lands of the Water Company. But the Water Company made no agreement to do or to refrain from doing anything on its own land, and its right to furnish the water from any source was unrestricted. Further, it appears that during the whole period no water was conveyed directly from any spring on the land of the company to the plaintiff's property, but first to the street mains, from which plaintiffs with others obtained their supply. As has been said with respect to the provisions of contracts creating building restrictions claimed to be covenants running with the land, if parties desire to create mutual rights in real property they must say so and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them, which constitute the final expression of their understanding (*Werner* v. *Graham*, 181 Cal. 174 [183 Pac. 945]; *Title Ins. etc. Co* v. *Miller & Lux*, 183 Cal. 71 [190 Pac. 433]; *Mapel* v. *Canady*, 189 Cal. 373 [208 Pac. 280]; *McBride* v. *Freeman*, 191 Cal. 152 [215 Pac. 678]); and a provision in an instrument claimed to create such a servitude is strictly construed, any doubt being resolved in favor of the free use of land. (77 Cal. Jur., Covenants, sec. 19, p.

733.) As stated, the agreement contained no reference to the lands of the company, and the method of supply indicates no intention to impose more than a personal obligation to furnish water.

It has been held, however, that covenants to furnish water which has been appropriated from a stream for irrigation purposes constitute a contract for the sale of an interest in real property, and the right to have the water flow from the canal through a lateral ditch is a servitude upon the ditch and canal, and is an appurtenance to the land to be irrigated (*Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716 [15 L. R. A. (N. S.) 359, 93 Pac. 858]; *Henrici* v. *South Feather Land etc. Co.,* 177 Cal. 442 [170 Pac. 1135]; Const., art. XIV, sec. 1); and the rule has been applied to a public utility where the plaintiff's land was purchased from the Water Company or its predecessor together with the water right. (*Hunt* v. *Jones,* 149 Cal. 297 [86 Pac. 686]; *Graham* v. *Pasadena Land etc. Co.,* 152 Cal. 596 [93 Pac. 498].) In *Henrici* v. *South Feather etc. Co., supra,* it was said that the agreements under consideration in the above cases conveyed a specific right in real property affecting the system of the Water Company, and that anyone purchasing such system with notice, actual or constructive, of the land owner's interest took subject to it.

If a covenant runs with the land the covenantor together with his heirs, devisees, assignees or subsequent purchasers will be liable for its breach (7 R. C. L., Covenants, sec. 37, pp. 1122, 1123); but it is not essential to relief in equity that this be so, as it has been held that whether covenants of the character of those considered in the foregoing cases are such as run with the land or are personal covenants equity will enforce them against purchasers from the covenantor who take with notice. (*Henrici* v. *South Feather etc. Co., supra; Bryan* v. *Grosse,* 155 Cal. 132 [99 Pac. 499]; *Morton* v. *Holm,* 197 Cal. 733 [242 Pac. 718]; Pomeroy's Equity Jurisprudence, sec. 1295.) While the doctrine appears to be now restricted by the English courts to negative covenants (see *Hayward* v. *Brunswick etc. Bldg. Soc.,* 8 L. R. (Q. B. Div.) 403; *Austerberry* v. *Oldham,* 29 L. R. (Ch. Div.) 250, where *Cooke* v. *Chilcott,* 3 L. R. (Ch. Div.) 694, which extended the rule established by *Tulk*

v. *Moxhay*, 2 Ph. 774, 41 English Reports Reprint, 1143, is criticised), in this country it has been applied generally to both affirmative and negative covenants (Pomeroy's Equity Jurisprudence, sec. 1295). Likewise pecuniary relief has been granted in equity in cases of this character. Thus in *Relovich* v. *Stuart*, 211 Cal. 422 [295 Pac. 819], the owner of a tract of land developed by means of a pumping plant water for use thereon. A portion of the tract was sold to plaintiff, the owner agreeing to furnish sufficient water for its irrigation. Later the defendant purchased the remainder of the tract with notice but refused to deliver water. It was held, citing the above cases, that regardless of whether the covenant ran with the land it would be enforced against one taking with notice, and that damages were recoverable.

The proprietor of a public utility is bound to provide and maintain the service in accordance with the requirements imposed by law, custom or special contract (22 Cal. Jur., Public Utilities and Service, secs. 41, 42, pp. 50, 52) ; and in the Henrici case, *supra,* where the defendant's predecessor, both water companies being public utilities, had sold land to the plaintiff with a water right, the defendant, which purchased the water system with notice, was held to be bound to perform the contract and to be liable in damages for its failure to do so. Also where a system to supply water for public use is established all persons to whose use the water is appropriated or dedicated are vested with a right to have the supply continued by whomsoever may be in control, and may enforce the right against such persons, whether a municipality or a private corporation or an individual. (*South Pasadena* v. *South Pasadena Land etc. Co., supra.*) However, no cases in which pecuniary relief has been awarded, where the duty sought to be enforced was purely equitable and relief in equity was denied, have been brought to our attention. Such relief has been asked in actions to specifically enforce contracts to convey real property where the vendor subsequently transferred the same to a third party who did not assume the contract but who took with notice; and it has been held that notwithstanding the impossibility of specific performance, in the absence of a conspiracy between the vendor and his grantee to defraud the plaintiff no judgment for pecuniary relief could be recovered against the

grantee, this for the reason that damages in lieu of specific performance are, in the absence of fraud, based upon a breach of contract to which the grantee was not a party and which he had not assumed. (*Leinbach* v. *Dyatt,* 112 Kan. 782 [212 Pac. 894]; *Mueller* v. *Wall,* (Mo. App.) 251 S. W. 119; 7 Bancroft's Code Pleading and Remedies, sec. 5577.)

But whatever may be the rule where, as suggested in the Henrici case, an equitable property right is created, when the covenant to deliver water is one which does not run with the land of the covenantor but is merely the ordinary agreement by a public utility to deliver water, it is the rule that notwithstanding the distributing system and the water have been dedicated to a public use the right of a consumer is not a water right in the sense of a private freehold interest in the real estate of the distributing company, but simply a right of service so long as the utility controls the instrumentality rendering the service. Such a contract cannot attach to the land of the consumer as an appurtenance, its effect being merely to bring the land within the territory to which the public use extends and establish its status as land entitled to share in the public use. (*Fresno etc. Co.* v. *Park, supra; Hildreth* v. *Montecito Creek Water Co.,* 139 Cal. 22 [72 Pac. 395]; *Glenn-Colusa Irr. Dist.* v. *Paulson,* 75 Cal. App. 57 [242 Pac. 494]. See, also, *Leavitt* v. *Lassen Irr. Co., supra,* explaining the effect of *Hunt* v. *Jones* and *Stanislaus Water Co.* v. *Bachman, supra.*)

The facts of the case at bar make applicable the rules declared in the cases last cited, and nothing has been shown which sustains the claim for damages against appellant Gleason. As stated, the agreement made no reference to the land of the utility nor did it purport to create an easement, and the court concluded in effect that specific performance thereof could not be had. It is conceded that Mrs. Gleason had not acquired the status or assumed the duties of a public utility; and while she acquired the land upon which were sources of supply she did not succeed to the franchises or acquire the distributing system of the company. Moreover, she in no way interfered with the use of the water or the operation of the system, nor, so far as appears, has she ever objected to such use, either by the

company, its trustees or by plaintiffs. There was no assumption by her of plaintiffs' contract with the water company, nor was she directly or indirectly responsible for the removal or destruction of the company's mains or the pipes through which plaintiffs had derived their supply.

In view of the foregoing, the question whether she took with notice is not material, nor is the question whether plaintiffs by their use of the water after the company ceased to operate in 1915, acquired a prescriptive right to pipe the same from any of the springs on the lands of the company to their property.

 Plaintiffs claim that judgment should have been entered against defendant Mary Hickman individually as well as against her as a trustee, it being alleged that Louis M. Hickman, a corporation, was substantially the sole stockholder of the Water Company, and said Mary Hickman the principal and controlling stockholder in the first mentioned corporation; but, as pointed out by appellants, plaintiffs have not appealed from the judgment and are bound thereby. (*Cherney* v. *Johnson,* 72 Cal. App. 725, 735 [239 Pac. 150].)

We are satisfied that the conclusions of the trial court as respects the liability of the Water Company for damages and the amount thereof were correct, but that as to defendant Gleason no cause of action was shown. Accordingly the judgment as to Kate Gleason is reversed, and as to the other appellant is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 12, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 9, 1932.