Coos
No. 7597

WINSTON E. EMERY & a.

v.

CALEDONIA SAND AND GRAVEL CO., INC.

May 31, 1977

442

444

*Hale & Dorr* and *William A. Ingram,* of Lancaster (*Mr. Stephen H. Oleskey* orally), for the plaintiffs.

*Hinkley & Donovan,* of Lancaster (*Mr. Arthur H. K. Davis* orally), for the defendant.

Bois, J. The plaintiffs, husband and wife farm operators, entered into a landfill removal contract with the defendant road construction company. Under the terms of the several written agreements, the plaintiffs allowed the defendant to remove earthfill from a certain site on their farmland at a specified unit charge. The agreements imposed upon the company the obligation to restore the "pit" (excavation area) upon completion of its operations. The defendant was obligated, *inter alia,* to leave the area "reasonably level with all back slopes no steeper 6:1"; to replace all topsoil; to spread all disturbed areas "with the original topsoil or strippings, or with some other material capable of supporting vegetation"; to fertilize and seed the pit area; and to clean up all areas disturbed by the operation to the owners' specifications."

The plaintiffs were fully paid for the fill removed but were dissatisfied with defendant's restoration of the land. Suit was brought to recover damages alleging defendant was in breach of its restoration obligations. The Trial Court (*Douglas,* J.) found for the plaintiffs in the sum of $17,520. Defendant's exceptions to the ver-

dict and various rulings by the court have been reserved and transferred.

The evidence was undisputed that the defendant had failed to render the back slopes "no steeper than 6:1." There was also substantial evidence that much of the original topsoil from the pit area had been "lost" during the removal operation, and that topsoil depth had deteriorated from twelve inches before the operation to four inches or less after. Finally, there was evidence that the area had been the source of a substantial hay crop prior to the removal, but was later able to support only a meager stand of grass. The trial court found that the Emerys had ~~been damaged in the following amounts:

1. $3,000 for the cost of 2,000 cubic yards of fill needed to bring the back slopes to the specified grade;
2. $10,500 for the cost of 6,000 cubic yards of topsoil required to restore the topsoil to its original depth;
3. $3,000 as the fair and reasonable value of lost hay crops for the years 1972 to 1975; and
4. $1,020 as the fair and reasonable cost of plowing, harrowing, disking, fertilizing, seeding and feathering the disturbed area (as specified by the owners) in order that the fertility of the topsoil would be restored.

■■■ Defendant's principal contention on appeal is that the court erred in considering certain parol evidence relative to plaintiffs' understanding that their land would be restored so as to be usable as a hayfield. The written agreements made no mention of use of the land as a hayfield, and defendant contends that the oral statements should have been excluded under the "parol evidence rule." This common law rule provides:

> When two parties have made a contract and have expressed it in a writing to which they both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. 3 A. Corbin, Contracts § 573, at 357 (1960).

■■■ We find no merit to defendant's contention. The written agreements provided that the defendant would replace all topsoil and otherwise prepare the soil to the owners' specifications. If

these undertakings had been performed, the land would have been usable as a hayfield. Thus the parol evidence in question did not vary or contradict contractual duties as expressed in the writing.

██ The defendant may not complain that the trier of fact considered the hayfield evidence. In awarding damages, it was incumbent on the court to grant compensation for those injuries the defendant had reason to foresee as a probable result of its breach when the contract was made. " 'If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury'." *Johnson v. Waisman Bros.*, 93 N.H. 133, 135, 36 A.2d 634, 636 (1944); Restatement, Contracts § 330 (1932). The court could properly consider the hayfield evidence in determining whether the claimed lost crops were a probable result of the defendant's breach. There was no damage limitation provision in the written agreements, and the evidence cannot be said to present any parol evidence problem.

██ The defendant also complains that the court erred in using the ordinary contract measure of compensatory damages. Under this measure, an effort is made "to put the injured party in as good a position, so far as money damages can put him, as he would have occupied had the defendant fully performed." *Dunn & Sons, Inc. v. Paragon Homes of New Eng. Inc.*, 110 N.H. 215, 218, 265 A.2d 5, 8 (1970); *Salvucci & Sons Inc. v. State*, 110 N.H. 136, 154, 268 A.2d 899, 911 (1970); *Coos Lumber Co. v. Builders Supply Co.*, 104 N.H. 404, 406, 188 A.2d 330, 331 (1963).

The defendant relies on a tort case, *Moulton v. Groveton Papers Co.*, 114 N.H. 505, 323 A.2d 906 (1974), involving damages to real property occasioned by flooding resulting from the breach of a dam. In *Moulton* we stated:

> These plaintiffs allege that their properties have unique value to them and that they do not seek to sell, but rather restore them. If it can be found on the evidence that these properties can and will be restored to their prior conditions without costs disproportionate to the actual injury, the cost of such restoration is the measure of damages. If restoration is impracticable, the difference between the value of the properties before and after the

injury is the measure of damages. 114 N.H. at 513, 323 A.2d at 911.

The defendant here argues that "there is no evidence that the plaintiffs will restore the premises to their alleged prior condition if awarded damages," and thus that compensatory damages are inappropriate.

 We note initially that *Moulton* is a tort case and it is thus readily distinguishable: "In a case of tort . . . the general purpose of compensation is to give a sum of money to the person wronged which, as nearly as possible, will restore him to the position he would be in if the wrong had not been committed. In the case of a breach of contract, the goal of compensation is not the mere restoration to a former position, as in tort, but the awarding of a sum which is the equivalent of performance of the bargain— the attempt to place the plaintiff in the position he would be in if the contract had been fulfilled." C. McCormick, Law of Damages § 137, at 560–61 (1935).

 Further, assuming that the *Moulton* standard were applicable here, the court denied the defendant's proposed finding to the effect that there was "no evidence" that the plaintiffs would restore the land. It is a fair inference from plaintiff husband's testimony that restoration is contemplated, and we cannot say that the denial of the requested finding was clearly erroneous.

 We agree that there are occasions when it would be economically wasteful to place the aggrieved party under the contract in the "same place" he would have occupied had the contract been fully performed, and on such occasions the ordinary measure of contract damages may not be employed. For example, in the context of a construction contract, the usual measure of damages may be withheld if "physical reconstruction and completion in accordance with the contract [would] involve unreasonable economic waste by destruction of usable property or otherwise." J. Calamari and J. Perillo, Contracts §230, at 363 (1970); *see Danforth v. Freeman,* 69 N.H. 466, 43 A. 621 (1898). It is said that the "true rationale" underlying this rule of damages is one of unjust enrichment since "[i]n all likelihood if the owner were to recover this [disproportionate] amount in such circumstances he would pocket the recovery." J. Calamari and J. Perillo *supra.* However,

there is no showing of disproportionality in this case. A valuable income-producing asset has been rendered unproductive; the damages awarded constitute a reasonable means of bringing that asset back to life. If the plaintiffs choose to "pocket" their recovery, they will have foregone the restoration of their land; they will not have been unjustly enriched.

The defendant further complains that the damage award is excessive in that the plaintiffs failed to mitigate and avoid damages. Relying on testimony by the plaintiff husband that he witnessed the defendant's deficient restoration of the topsoil, the defendant argues that plaintiff should "have spoken up at that time"; additionally, defendant argues that plaintiffs could have taken steps to do what had to be done for the damaged land. The trial court denied defendant's proposed findings on this issue, holding that the expenditures required by plaintiffs would have been prohibitive.

We find no reason to disturb the rulings of the trial court. The law requires reasonable efforts by a plaintiff to curtail his loss. *Murray v. Boston & Maine R. R.*, 107 N.H. 367, 375, 224 A.2d 66, 72 (1966); *Novak v. Company*, 84 N.H. 93, 96, 146 A. 525, 526 (1929). Recovery will not be permitted of damages which could have been "avoided by reasonable effort without undue risk, expense, or humiliation." Restatement, Contracts § 336(1) (1932). The evidence in this case is clear that no hay crop would be possible without the restoration of topsoil. Since this would involve a $10,500 expenditure it was not error for the court to conclude that the expenditure was not within the plaintiffs' duty to mitigate. *See Chambers v. Belmore Land Co.*, 33 Cal. App. 78, 164 P. 404 (1917). This case is obviously distinguishable from the situation where the required expenditure is one for seed only. Defendant's reliance on *Wavra v. Karr*, 142 Minn. 248, 172 N.W. 118 (1919), is thus misplaced.

Nor can we agree that plaintiff failed to "speak up." The evidence shows that the following events occurred as defendant completed its restoration efforts in the fall of 1971. Defendant's superintendent told plaintiff that he should "squawk" in the spring if the disturbed area failed to come up "green and good." An officer of the defendant, when presented by the plaintiff with a partial listing of additional contractual work that needed to be

done, told him that "he would see us in court before we got any more money." On this evidence, one could reasonably conclude that the defendant was fully aware of deficiencies in its performance but simply chose not to remedy them. We will not disturb the finding of the trier of fact. *Cf. Fuller v. Brown*, 67 N.H. 188, 34 A. 463 (1892).

Defendant contends the court prejudicially erred in observing holes dug by both parties on a view of the premises after the conclusion of the trial testimony. We note that this evidence, which showed shallow levels of topsoil, merely confirmed trial testimony to the same effect. Moreover, defendant, if it felt it had any meaningful rebuttal to this evidence, could have moved for the reopening of the testimony. We find no error here. *See Flint v. Company*, 73 N.H. 483, 62 A. 788 (1906).

We further reject defendant's contentions that the evidence was insufficient to support the court's finding of deficient performance and its award of damages.

*Exceptions overruled.*

DOUGLAS, J., did not sit; the others concurred.