Grafton
No. 78-266

JOHN P. ZAREAS

v.

ALFRED D. SMITH

July 11, 1979

*Cullity & Kelley*, of Manchester (*George W. Roussos* orally), for the plaintiff.

*Peter H. Fauver*, of North Conway, by brief and orally, for the defendant.

BROCK, J.   This is an action brought by the seller of real estate for damages allegedly suffered as the result of defendant-purchaser's breach of an executory real estate contract. At trial, defendant disputed both the validity of the purchase-sale agreement and the amount of damages claimed by the plaintiff. Trial to the Court (*Johnson*, J.) resulted in a ruling that the purchase-sale agreement was enforceable and in an award of $14,500 damages to the plaintiff. Defendant's exceptions were reserved and transferred. On this appeal, the defendant contests only the measure of damages adopted by the trial court.

On April 30, 1976, the plaintiff agreed to sell and the defendant agreed to buy a restaurant building known as the "Fraulein" or "Country Belle" and two acres of land on which it was located for $47,000. The trial court found that the contract "can hardly be called a masterpiece of legal writing," although it technically satisfies the statute of frauds, RSA 506:1. The contract did not specify a date for closing. It contained no provisions allocating risks or apportioning expenses such as taxes and insurance, and did not provide for liquidated damages or forfeiture in case of a breach. Shortly thereafter, a personal check for $8,000 that the defendant had given

the plaintiff was dishonored for insufficient funds, and on May 12, 1976, plaintiff received notice that the defendant did not intend to purchase the property. The plaintiff elected not to seek specific performance, but commenced this action for damages in June 1976. In February 1977, prior to trial, the restaurant building that was the subject of the purchase-sale agreement was totally destroyed by fire. The building was insured for $35,000 and the plaintifff received that amount from his fire insurance carrier. In August 1977, the plaintiff sold an eighteen-acre tract, including the two acres on which the restaurant had been located, for $35,000.

At trial, the plaintiff presented the following computation of damages which the court adopted and used as the basis for the award damages which the court adopted and used as the basis for the award made to the plaintiff:

| | | |
|---|---:|---:|
| Sale of the Fraulein and 2 acres of land to Smith | $47,000.00 | |
| Fair Market Value of remaining sixteen (16) acres | 32,000.00 | |
| | | $79,000.00 |
| LESS: | | |
| Insurance proceeds from sale of the Fraulein following fire | $35,000.00 | |
| Sale of eighteen (18) acres of land to a third party | 35,000.00 | −70,000.00 |
| | | $ 9,000.00 |
| PLUS: | | |
| Cost to Plaintiff to remove remnants of burned building from land prior to sale | $ 1,200.00 | |
| Interest on mortgage on Fraulein from April 30, 1976 through August, 1977 | 2,900.00 | |
| Real Estate taxes and insurance during said period | 1,400.00 | |
| Total | | $ 5,500.00 |
| Total Damages Claimed by Plaintiff | | $14,500.00 |

■ The issue before us is the proper measure of the seller's damages when the purchaser refuses to perform under an executory real estate contract. The proper measure of damages is the seller's "loss of bargain," the difference between the contract price and the actual value of the real estate at the time of the breach. *Griswold v. Sabin*, 51 N.H. 167, 170 (1871); *see* Annot., 52 A.L.R. 1511 (1928). If the market value of the real estate at the time of the breach is equal to or greater than the contract price, the plaintiff can recover only nominal damages. *Hurd v. Dunsmore*, 63 N.H. 171, 173 (1884). The burden of establishing that the contract price exceeded the actual value of the real estate at the time of breach is, in this case, upon the plaintiff-seller. *Lupien v. Rousseau*, 98 N.H. 459, 102 A.2d 502 (1954).

■ The trial court granted plaintiff's requests that his expert "testified that the sum of $47,000 was a fair and reasonable price for the sale of 2 acres of land and 'The Fraulein,'" and that the "Purchase and Sale Agreement was fair and reasonable as to its terms and conditions." On cross-examination the plaintiff's expert agreed that $47,000 was a fair price for the building plus two acres in May 1976, at the time of the breach. Instead of using the $47,000 figure, however, the trial court based its computation of market value on the insurance proceeds following the fire, which reflected the amount of insurance coverage that the plaintiff had chosen to purchase, plus the proceeds of the sale of a different quantity of vacant land more than a year after the breach. Neither factor is relevant in establishing the loss in bargain attributable to the breach. *See Griswold v. Sabin*, 51 N.H. 167 (1871); *accord, MacRitchie v. Plumb*, 70 Mich. App. 242, 245 N.W.2d 582 (1976). We hold that the plaintiff has failed to sustain his burden of proving that the contract price for the sale of the real estate in question exceeded the actual value of the property on the date of defendant's breach. Upon remand, plaintiff is entitled to only nominal damages. *Hurd v. Dunsmore*, 63 N.H. 171 (1884).

The trial court also awarded, as consequential damages, $4,300 for insurance, real estate taxes, and mortgage interest on the property from April 30, 1976, through the resale in August 1977, plus $1,200 for removing debris after the fire. These expenses were not specifically attributable to the second sale, nor were they incurred prior to the breach in preparation for performance. *See* Annot., 17 A.L.R.2d 1300 (1951). The insurance, taxes, and mortgage interest were normal expenses associated with ownership and maintenance of the property after the breach.

■■ In addition to any loss in value, the seller may be permitted to recover specific consequential damages that "could have been reasonably anticipated by the parties as likely to be caused by the defendant's breach." *Hurd v. Dunsmore*, 63 N.H. 171, 174 (1884); *see Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576 (1978). The scope of "foreseeable," and therefore recoverable, damages is narrower in a contract case than in tort. D. DOBBS, REMEDIES 804 (1973).

■ The contract here did not specify a closing date, and even without the defendant's breach the plaintiff might have retained ownership for part or all of the time period for which he now seeks reimbursement. The record here is clear that the defendant never had physical possession or any other beneficial use of the property. At all times prior to the resale, the plaintiff-seller retained the exclusive right to possession and to the beneficial use, occupation, and enjoyment of the property, including the right to rents and profits. *See Cote v. Chesley*, 577 F.2d 71, 74 (8th Cir. 1978) (Minn. law); *Laurin v. DeCarolis Constr. Co.*, 363 N.E.2d 675, 372 Mass. 688 (1977); *Lischak v. Kotzer*, 408 N.Y.S.2d 996 (Sup. Ct. 1978); 92 C.J.S. *Vendor & Purchaser*, §§ 284(a), 288(c) (1955). Because the contract did not provide for any apportionment of expenses such as taxes and interest, the seller as owner remained responsible for them until the date of conveyance. *See Dana v. Colby*, 63 N.H. 169, 171 (1884); *Howells v. Albert*, 37 Misc. 2d 856, 236 N.Y.S.2d 654 (Sup. Ct. 1962). He also bore the risk of loss, *Lampesis v. Travelers Ins. Co.*, 101 N.H. 323, 326, 143 A.2d 104, 106 (1958), and was therefore responsible for procuring insurance.

■ In determining the damage allegedly suffered by the plaintiff because he was forced to continue holding the property, the trial court failed to take into account the offsetting income and benefits, including tax benefits, that were or could have been derived from the property. *Accord, Sutter v. Madrin*, 269 Cal. App. 2d 161, 168, 74 Cal. Rptr. 627, 631–32 (1969). At most, the seller's actual damage would be his net loss, the difference between the expenses of ownership and the benefit that one would reasonably expect to derive from the property under prudent management. *Cf. New Hampshire Highway Hotel v. City of Concord*, 119 N.H. 122, 399 A.2d 290 (1979). The plaintiff cannot shift to the defendant any loss resulting from his own failure to make the most productive possible use of the property. "The law requires reasonable efforts by a plaintiff to curtail his loss. Recovery

will not be permitted of damages which could have been 'avoided by reasonable effort without undue risk, expense, or humiliation.' Restatement [of] Contracts § 336(1) (1932)." *Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 448, 374 A.2d 929, 934 (1977); *see* 77 AM. JUR. 2d *Vendor and Purchaser* § 489 (1975).

Even if it were found that the operating expenses exceeded any benefit the plaintiff could have derived from continued ownership, that loss is not chargeable to the defendant. The defendant's breach did not result in any operating expenses greater than those necessarily incurred by any one who owned the property during the same period. If the parties, at the time of contracting, anticipated that the normal operating expenses would exceed the benefits that could be derived from the property, that expectation would be reflected in the contract price. If the operating loss was foreseeable at the time of breach because of facts apparent at that time it would appear as a diminution in market value. *See New Hampshire Highway Hotel, Inc. v. City of Concord*, 119 N.H. 122, 399 A.2d 290 (1979). The seller would then recover for the drop in value of his asset and under the "loss of bargain" rule set forth above, but could not also recover for the reduced net income that had caused the drop in value. See D. DOBBS, REMEDIES 817 (1973). The recovery urged by the plaintiff would make it highly profitable for a seller to hold land indefinitely following an unsuccessful attempt to sell, rather than acting diligently to curtail his losses. *Cote v. Chesley*, 577 F.2d 71, 74 (8th Cir. 1978) (Minn. law); *Sutter v. Madrin*, 269 Cal. App. 2d 161, 170, 74 Cal. Rptr. 627, 633 (1969).

On the facts here, the plaintiff cannot maintain that the defendant had reason to foresee that ownership of the property, beginning in May 1976, would result in a net operating loss of approximately $345 per month. The plaintiff's expert testified that at the time of the breach the fair value of the property was $47,000, the contract price. The plaintiff is bound by that measure of value. *Newcomb v. Ray*, 99 N.H. 463, 468, 114 A.2d 882, 885 (1955). The only reasonable inference from these facts is that in April and May of 1976, the parties believed that the property would yield a net return to its owner sufficient to justify an investment of $47,000. Any operating loss that was not sufficiently foreseeable to affect the market value of the property at the time of breach cannot be considered foreseeable by the defendant so as to allow the plaintiff to recover.

We hold that the seller's expenses for normal maintenance and possession of the premises are not damages resulting from the

defendant's breach, and cannot be charged to the defendant. *See Newcomb v. Ray*, 99 N.H. at 468, 114 A.2d at 885; *accord, Abrams v. Motter*, 3 Cal. App. 3d 828, 83 Cal. Rptr. 855, (1970); *Sutter v. Madrin*, 269 Cal. App. 2d 161, 74 Cal. Rptr. 627 (1969); *Pfeil Constr. Corp. v. Moley*, 14 Misc. 2d 379, 179 N.Y.S.2d 443, 449 (Sup. Ct. 1958); *Hayden v. Pinchot*, 172 App. Div. 102, 158 N.Y.S. 215 (1916).

██ ██ The plaintiff also cannot recover as damages the cost of removing the remnants of the building after the fire, which occurred in February 1977, ten months after the breach. The seller cannot include as special damages any items of expense that he would have incurred in the absence of any breach. D. DOBBS, REMEDIES 853 (1973). If the executory contract had remained in force and had not been breached, the plaintiff would have borne the full costs of the fire. "[I]n the absence of a different agreement by the parties, the risk of loss under an executory contract for the sale of real estate falls upon the vendor." *Lampesis v. Travelers Ins. Co.*, 101 N.H. 323, 326, 143 A.2d 104, 106 (1958). The parties here did not contract to shift the risk of loss to the defendant prior to closing. The clean-up expenses due to the fire cannot be considered damages that follow a breach in the usual course of events which the defendant would have reason to foresee. *See Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 446, 374 A.2d 929, 932 (1977). The plaintiff chose the amount of insurance coverage on the property, and cannot shift to the defendant any loss resulting from inadequate coverage. Nor was the fire loss due to special circumstances known to the defendant at the time of contracting. *See Coos Lumber Co. v. Builders Supply Co.*, 104 N.H. 404, 406, 188 A.2d 330, 331 (1963); Hadley v. Baxendale, 9 Exch. 341, 353 (1854). The trial court erred in awarding damages attributable to removing the debris after the fire.

The plaintiff may recover only nominal damages.

*Exceptions sustained; remanded.*

All concurred.