Rockingham
No. 7561

ROBERT E. GRANT

v.

TOWN OF NEWTON

February 28, 1977

*Casassa, Mulherrin & Ryan,* of Hampton (*Mr. John J. Ryan* orally) for the plaintiff.

*Carleton Eldredge,* of Exeter (by brief and orally) for the defendant.

Bois, J. Plaintiff, seeking damages, appealed to the Superior Court (*Douglas,* J.) from a decision of the town selectmen denying him a permit to remove gravel.

In January of 1973, plaintiff purchased property in the town of Newton for $20,000 in cash and a $55,000 purchase money mortgage taken back by the seller. Plaintiff had determined gravel was present on the property, and he planned to remove and sell the gravel and then prepare the property for a residential subdivision. He did not specifically know that the town had an earth removal ordinance, but he knew that he would need official approval for his proposed gravel operation, as well as for the proposed subdivision.

In relevant part, the earth removal ordinance provided:

> [T]he Board of Selectmen may issue a permit for the removal of any top-soil and/or sub-soil from any parcel of

land in the Town where such removal is incidental to and in connection with the construction of a road, public way, or any other facility involving a permanent change in the use of the land. The Board shall issue no permit under this sub-section unless it is reasonably satisfied that the construction will be completed according to the conditions imposed on the permit and evidence thereof shall be made part of the records of the Board.

Plaintiff's agent, one Jason Baker, delivered a request to the board of selectmen for permission to remove the gravel, but was told informally that a permit would probably not be granted. Thereafter, in March of 1973, plaintiff's attorney wrote to the selectmen and requested a public hearing. Meanwhile, plaintiff, anticipating eventual favorable action on his permit application, refinanced the property.

During the period of March through June 1973, the board of selectmen and plaintiff's attorney communicated concerning the information that would need to be furnished for the public hearing. Plaintiff hired a surveyor and plans were prepared at a total cost of $3,990. Of this amount, the superior court found that no more than $150 could have been attributable solely to the gravel removal application; the remainder would have been incurred in any event in connection with the preparatory work for the subdivision permit application.

In June of 1973, plaintiff met privately with the board. On June 26, 1973, he was informed by letter that he would not be permitted to remove the gravel and that no public hearing would be held. The board's rationale was that a commercial gravel operation would be incompatible with the residential zoning classification of the property. Plaintiff's request for reconsideration of this decision proved fruitless. Plaintiff subsequently defaulted on his mortgage note and the property was foreclosed.

In separate proceedings, plaintiff proved unsuccessful in his attempt to win approval for his planned subdivision. The propriety of the denial of the subdivision permit is not challenged here. Moreover, in his appeal filed in the superior court, plaintiff acknowledged that under the terms of the earth removal ordinance he would be entitled to a gravel removal permit only if the gravel removal would be incidental to ultimate use of the property "for

house lots which shall be the subject of an appropriate subdivision."

In this suit for damages, plaintiff claims that the board erred in denying him a permit for gravel removal. He claims costs relating to the gravel permit application, the initial cost of the property, sums expended in the refinancing of his indebtedness, and his estimate of the dollar value of the on-site gravel.

The superior court held that it need not decide the governmental immunity issue presented by this suit against a town, "for, even assuming defendants are liable the Court cannot find any damages assessable." *See Merrill v. Manchester,* 114 N.H. 722, 332 A.2d 378 (1974). The court noted that the planned subdivision was never approved and found that the same survey costs and business risks were involved in the planned gravel and subdivision operations. Since the unchallenged denial of the subdivision permit sounded the death knell of all plaintiff's business plans, the court reasoned that the alleged wrongful denial of the gravel permit could not be said to have resulted in any injury.

Failure to prove actual damage entitles the defendant to a verdict. *Trudeau v. Company,* 89 N.H. 83, 192 A. 491 (1937). It is general law that one who claims damages has the burden of proof. He must by a preponderance of the evidence show that the damages which he seeks were caused by the alleged wrongful act and he must show the extent and amount of such damages. 22 Am. Jur. 2d *Damages* § 296, at 394. The party seeking to recover must convince the court that the damages sought represent charges which were justly and fairly incurred. *Plymouth Village Fire Dist. v. New Amsterdam Cas. Co.,* 130 F. Supp. 798 (D.N.H. 1955). It is not incumbent on the trier of fact to accept the damage schedule at face value. *Berke v. Griffin,* 116 N.H. 760, 367 A.2d 583 (1976).

The trier of fact made a finding that there were no damages assessable. A review of the record discloses ample evidence to support this finding. Thus, the finding will not be disturbed on appeal. *Vittum v. New Hampshire Ins. Co.,* 117 N.H. 1, 369 A.2d 184 (1977); *Iafolla Industries, Inc. v. Curran-Cossette Constr. Corp.,* 116 N.H. 850, 368 A.2d 1175 (1976); *Spectrum Enterprises Inc. v. Helm Corp.,* 114 N.H. 773, 329 A.2d 144 (1974); *Streeter v. New England Box Co.,* 106 N.H. 146, 207 A.2d 423 (1965).

The plaintiff, having failed to satisfy the burden of proof required of him, must fail in his action whether or not fault existed

on the part of the defendant. It also follows that we need not consider questions as to governmental immunity.

*Exceptions overruled.*

DOUGLAS, J., did not sit; the others concurred.