Rockingham
No. 79-169

PROGRESSIVE SURVEY, INC.

v.

BEVERLY V. PEARSON
d/b/a/PEARSON ASSOCIATES

January 31, 1980

*Wiggin & Nourie*, of Manchester (*James G. Cook* orally), for the plaintiff.

*Cullity & Kelley*, of Manchester (*John Czeciuk* orally), for the defendant.

GRIMES, C.J.   The issue in this appeal is whether the trial court erred in determining damages. Finding no error, we affirm.

According to an agreed statement of facts, the plaintiff, Progressive Survey, Inc. (hereinafter Progressive) owned a certain tract of land in Derry, New Hampshire. Progressive acquired the land in 1959 from its president and majority stockholder, William D. Blunt. Following several unsuccessful attempts to sell or develop the land, the plaintiff decided to subdivide the parcel itself and placed Mr. Blunt in charge.

In 1973, in pursuit of this plan, Mr. Blunt hired the defendant, Beverly V. Pearson, doing business as Pearson Associates, to provide a

topographical survey and contour profile of the Derry property to be used in designing a road for the subdivision. The resulting survey indicated that a straight road could be built, thus allowing Progressive to maximize the number of lots available for sale. The plan also indicated that the proposed road would require little ledge removal and fill to meet the six per cent maximum grade regulations of the town of Derry.

In reliance on the defendant's subdivision plan, which was based on his earlier contour profile, Progressive hired a road construction contractor, who began work on September 9, 1976. On September 17, 1976, an error was discovered in the contour profile. Specifically, defendant's plan showed a certain brook over which the road had to pass to be some 13.58 feet higher than its actual elevation. Consequently, the six percent gradient could not be achieved without a redesign of the road.

Progressive immediately notified the defendant of the error, whereupon Pearson undertook to furnish the plaintiff with a redesigned straight road profile. During this time, the plaintiff consulted another surveyor, who made some additional changes to the defendant's redesigned profile.

The new profile revealed that substantially more ledge removal and filling would be required to complete the road. For a variety of reasons, Mr. Blunt made the decision to go ahead with construction of the straight road. His testimony at trial indicated that Progressive ultimately spent over $50,000 more than it originally anticipated due to reliance on the flawed contour profile.

Defendant admitted its error, and the matter was tried only on the issue of damages. At the trial, Progressive proceeded upon the theory that because it embarked upon construction of the straight road in reliance upon defendant's erroneous plan, it was entitled to recover all expense incurred in excess of what would have resulted had the land actually been as defendant depicted it.

The trial court rejected the plaintiff's claim for recovery of all unanticipated expenses. The court noted that "[w]hile there was admitted error, the error was corrected and in no way created any ledge or required any additional fill or resulted in any damages except the sum of $1,050 for the change of the catch basin and the small amount of fill that had to be moved." Moreover, the trial court accepted the sum of $500 for corrective engineering work occasioned by the error and acknowledged by the defendant. Accordingly, it gave judgment for Progressive in the amount of $1,550 with interest and costs. Plaintiff's exception to the adequacy of this verdict was transferred by *King*, J.

To begin with, we note that regardless of whether Progressive's action is grounded in negligence or in contract, it may recover only its actual damages. *See, e.g., Emory Caledonia Sand and Gravel Co.*, 117 N.H. 441, 374 A.2d 929 (1977); 22 AM. JUR. 2d *Damages* § 13 (1965). Moreover, the burden of proving the extent and amount of such damages is placed upon the party seeking them. *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977). Here the plaintiff's president testified that it cost substantially more to build the road than he had anticipated based upon the defendant's erroneous survey. We regard it as elementary, however, that the defendant's error did not cause the added expense. The defendant did not cause the brook to be some thirteen feet lower in elevation than represented in the original plan. A surveyor may be held liable only for the actual losses flowing from his error. *Gagne v. Bertran*, 43 Cal. 2d 481, 491, 275 P.2d 15, 22 (1954); Annot., 35 A.L.R.3d 504, 510–11 (1971).

In *Gagne v. Bertran supra*, the Supreme Court of California was faced with an analogous claim whereby an owner of property sought to hold a soil engineer liable for the additional cost of installing a foundation where the soil engineer had incorrectly determined the depth of fill upon plaintiff's land. The court, in rejecting plaintiff's claim, concluded that "[t]he additional costs plaintiffs incurred in the installation of the foundation were not caused by defendant's misinformation, however, but by the physical condition of the land." 43 Cal. 2d at 491, 275 P.2d at 22.

We find the reasoning of the *Gagne* court to be persuasive in the instant case. Had the original contour survey been correctly drawn, plaintiff would have incurred the same expense that it ultimately did, save for those expenses that the trial court awarded. *See Roberts v. Karr*, 178 Cal. App. 2d 535 (1960). The elevation of the brook, and not defendant's erroneous survey, caused the increase in development costs.

On appeal to this court, Progressive now argues that damages should be allowed because, in reliance upon defendant's contour survey, it opted for a straight road. Progressive asserts that had it been able to correctly estimate the relative costs involved, it would have chosen to develop the land by using a contour road. In support of this argument, Progressive claims that such a contour road could have been constructed at a lesser cost than the straight road utltimately built, and that sufficiently compelling business reasons prevented it from switching to a contour road design upon learning of the error in September 1976.

██ We note, however, that this theory of recovery was not urged at trial and thus is not available here. *See e.g., Sperl v. Sperl,* 119 N.H. 818, 408 A.2d 422 (1979). Moreover, even were that not so, we would sustain the trial court because Progressive failed to prove damages. *See Grant v. Town of Newton,* 117 N.H. 159, 370 A.2d 285 (1977); *see R. J. Berke & Co. v. J. P. Griffin, Inc.,* 116 N.H. 760, 367 A.2d 583 (1976); *Trudeau v. Company,* 89 N.H. 83, 192 A. 491 (1937). There was no evidence offered at the trial concerning the cost of utilizing a contour road, and therefore it could not be found to be less expensive. Thus, even assuming that Progressive was, as of September 17, 1976, so deeply committed to the planned development that a change in plans was not feasible, no recovery beyond that allowed by the trial court would be proper. *Cf. Peter Salvucci & Sons, Inc. v. State,* 110 N.H. 136, 154–55, 268 A.2d 899, 911 (1970). Accordingly, we affirm the determination of the trial court.

*Exceptions overruled.*

KING, J., did not sit; the others concurred.