Rockingham
No. 85-032

PAREM CONTRACTING CORPORATION

v.

WELCH CONSTRUCTION CO., INC.
AND
THE SALEM HOUSING AUTHORITY

PAREM CONTRACTING CORPORATION

v.

FIREMAN'S FUND INSURANCE COMPANY
AND
WELCH CONSTRUCTION CO., INC.

July 9, 1986

*James A. Connor*, of Manchester, by brief and orally, for the plaintiff.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Wilbur A. Glahn, III*, and *Steven V. Camerino* on the brief, and *Mr. Camerino* orally), and *Frawley and Jennings*, of Massachusetts, for the defendant Welch Construction Co., Inc.

BATCHELDER, J. The defendant, Welch Construction Co., Inc. (Welch), appeals from an order of the Superior Court (*Dunn*, J.) awarding damages in quantum meruit to the plaintiff, Parem Contracting Corporation (Parem), and rejecting Welch's counterclaim for damages resulting from the plaintiff's breach of contract. We reverse and remand.

In 1981 Welch contracted with the Salem Housing Authority to build a federally subsidized housing project in Salem. Welch and Parem executed a subcontract dated January 7, 1982, in which Parem agreed to perform site preparation work for the project at a price of $220,000, payable in a series of monthly payments. Parem began work on that date. On April 27, 1982, complaining of "unsatisfactory payments and working relations," Parem removed its personnel and equipment from the site. Parem failed to return to the job, and on May 3 Welch notified Parem that it was terminating the contract.

Parem sued Welch, the housing authority, and Fireman's Fund Insurance Company, which served as surety for Welch under a performance bond. *See* RSA 447:16–:18. Parem sought $40,221 in damages, including $24,760 for gravel transported to and left on the job site, $9825 for a ten percent retainage held by Welch pursuant to the contract, and the remaining amount for extras allegedly performed. Welch counterclaimed for $171,505.82, the amount in excess of the contract price that it allegedly was required to spend to complete the work Parem had left unfinished. Each side contended that the other had broken the contract.

The trial court found that Parem had broken the contract because of its failure properly to staff the job and its employees' repeated attempts to remove from the site building materials owned by the housing authority. The court then ruled that although Parem could not prevail on the basis of the contract, it could recover in quantum meruit, and awarded it damages of $18,760. This sum represented the balance due on the gravel delivered to and left on the construction site, $24,760, minus the value of housing authority materials taken from the site, $6000. The court further found that the retainage provision of the contract was "essentially a liquidated damages clause," and that Parem had forfeited the $9825 retained by Welch when it broke the contract. The court also rejected Welch's counterclaim. It found that Welch's claimed damages "could have been avoided," and refused to "interpret the contract as placing the burden on [Parem] for excess costs which were the result of [Welch's] poor business judgment."

On appeal Welch argues that the trial court erred in (1) ruling that the contract's retainage provision was a liquidated damages clause limiting Welch's recovery; (2) failing to award Welch damages for the cost of completing the work Parem had agreed to perform; and (3) awarding Parem damages in quantum meruit for gravel left on the job site for which Welch, and not Parem, allegedly had paid. We consider these contentions in turn.

The defendant's first argument includes two parts: (1) the trial court incorrectly ruled that the retainage provision was a liquidated damages clause; and (2) the effect of this ruling was to limit Welch's recovery to the $9825 it retained. Although we do not accept the second part of the argument, we agree with the first part.

The retainage provision stated that the $220,000 contract price was payable as follows:

"Ninety percent . . . of all labor and material which has been placed in position and for which payment has been made by the [housing authority] to the Contractor, said

amounts to be paid on or about the 21st day of the following month, except the last payment. The last payment shall be paid by the Contractor to the Subcontractor immediately after all materials and labor installed by the Subcontractor have been completed, approved by the Architect, and final payment received by the Contractor and satisfactory evidence furnished to the Contractor by the Subcontractor that all labor and material accounts on this job have been paid in full, and all instruction manuals, as built drawings, and guarantees have been submitted and approved."

In *Hayes & Swift, Inc. v. Sabia Construction Co.*, 126 N.H. 81, 489 A.2d 107 (1985), we held that a retainage provision in a construction subcontract did not constitute an enforceable liquidated damages clause. A party owed a retainage does not forfeit the amount owed if it breaks the contract. If it sues to recover the retainage, however, its recovery is subject to the defendant's counterclaim in recoupment for the actual damages caused by the breach. *See id.* at 83, 489 A.2d at 108. *See generally* R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE §§ 371–374 (1984).

Although Welch contends that the trial court's error had the effect of limiting its recovery of damages, we do not interpret the court's order in this manner. In stating that the retainage provision was "essentially a liquidated damage clause forfeited by the breach," the trial court did not treat the provision as a bar to Welch's recovery of any damages exceeding $9825. The court rejected Welch's counterclaim, but for reasons other than the presence of the retainage provision, as discussed below. The error reduced *Parem's* recovery, not Welch's. We reverse the court's ruling that the $9825 represented liquidated damages forfeited by Parem. On remand that sum should be included in Parem's award.

Welch's second argument challenges the trial court's rejection of its counterclaim. Welch points to subparagraph 4(d) of the contract, which provided, in part:

"If the Contractor shall, in its opinion, determine that the Subcontractor is not performing this contract with due diligence or is delaying the work of the Contractor or other subcontractors, the Contractor shall so notify the Subcontractor and the Subcontractor shall, within forty-eight hours thereafter, furnish whatever materials, equipment and labor and shall work such hours as the

Contractor shall require for the prompt completion of said contract. If the Subcontractor fails to comply with said demand, the Contractor may terminate this contract and furnish the materials, equipment and labor necessary to complete the contract, in which event no further payment shall be made hereunder until the work . . . is completed. Upon such termination of the contract, all material on the site shall become property of the Contractor and appropriate credit therefore shall be given to the Subcontractor. *If the expense of completion exceeds the value of the subcontract, the Subcontractor will pay the Contractor this expense.* Should the cost to complete the Subcontract not exceed the Subcontract value the savings will be paid to the Subcontractor adjusted by any previous payments and credits made."

(Emphasis added.) The italicized sentence states the common law rule of damages in these circumstances. *See Marcou Construction Co. v. Tinkham Industrial & Development Corp.*, 117 N.H. 297, 299, 371 A.2d 1187, 1188 (1977).

At trial Welch introduced the testimony of Robert D'Orazio, its former general manager and president. D'Orazio stated that Welch had both expended additional labor and hired numerous subcontractors in order to complete the work Parem had agreed to perform. Welch also submitted a series of accounting sheets summarizing the costs it allegedly had incurred in this regard. These costs totalled $303,235.83, which exceeded the unpaid balance of the contract price by more than $170,000, the amount of the counterclaim. Parem introduced no evidence tending to show that the claimed damages were unfairly or imprudently incurred.

The trial court disposed of the counterclaim in the following manner:

"Welch . . . seeks to recover excess costs against the plaintiff pursuant to the contract executed by the Salem Housing Authority and Welch. The defendant has alleged that the cost to complete the project had grown from $220,000 to $396,000 because of the delay and because many companies had to be employed to do Parem's work. Although there was some testimony to this effect, the Court finds that these extra costs could have been avoided by the defendant. In addition, the Court will not interpret the contract as placing the burden on the subcontractor for excess costs which were the result of the general contractor's poor business judgment. For these reasons, the

> defendant's counterclaim fails and the defendant is not entitled to recover any damages for excess costs."

(Citations omitted.)

We read the above paragraph as containing *inter alia* two findings of fact, the first implied, the second express. The first finding is that Welch incurred an additional $176,000 in costs as a result of Parem's breach. The second finding is that these costs could have been avoided if Welch had not exercised poor business judgment. Once the court made the first of these findings, however, it was not at liberty to make the second finding on the basis of the evidence before it.

■ The trial court was not required to accept Welch's damages schedule, see *R. J. Berke & Co. v. J. P. Griffin, Inc.*, 116 N.H. 760, 766, 367 A.2d 583, 588 (1976), for Welch faced "the risk of non-persuasion" with respect to its counterclaim, *see Spilene v. Salmon Falls Manufacturing Co.*, 79 N.H. 326, 328, 108 A. 808, 809 (1920). Welch had the burden in the first instance of proving the extent and amount of its damages. *Whitehouse v. Rytman*, 122 N.H. 777, 780, 451 A.2d 370, 372 (1982). It was required to show that the claimed expenditures were incurred solely in completing work that Parem had agreed to perform and obtaining materials that Parem had agreed to supply.

■ However, once the trial court found that the costs actually were incurred as alleged, it was not permitted to conclude that they "could have been avoided" in the total absence of evidence to that effect. Parem, not Welch, had the burden of going forward with evidence that all or part of the costs could have been avoided without undue risk or burden, *see* RESTATEMENT (SECOND) OF CONTRACTS § 350(1) (1981). *See Eno Brick Corp. v. Barber-Greene Co.*, 109 N.H. 156, 160, 245 A.2d 545, 548 (1968); *McLaughlin v. Union-Leader Corp.*, 100 N.H. 365, 370, 127 A.2d 269, 272 (1956), *cert. denied*, 353 U.S. 909 (1957); Annot., 134 A.L.R. 242 (1941). "The burden of proving that losses could have been avoided by reasonable effort and expense must always be borne by the party who has broken the contract." 5 A. CORBIN, CORBIN ON CONTRACTS § 1039, at 251 (1964).

■ In *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977), we stated that "[t]he party seeking to recover must convince the court that the damages sought represent charges which were justly and fairly incurred." *Id.* at 162, 370 A.2d at 287 (citing *Plymouth Village Fire District v. New Amsterdam Casualty Co.*, 130 F. Supp. 798, 802 (D.N.H. 1955)). To the extent that the quoted lan-

guage could be construed as stating a rule contrary to that announced above, it is disapproved.

■ We hold that the trial court erred in rejecting Welch's counterclaim on the ground that the claimed expenses "could have been avoided." Because at trial the law on this point was uncertain, on remand Parem should be permitted to introduce evidence bearing on whether Welch's alleged losses were avoidable.

Welch's final argument pertains to Parem's claim in quantum meruit. At trial Welch stipulated that Parem had delivered and left on the site 8952 cubic yards of gravel. Parem contended that the value of the delivered material was $44,760 (the contract price), that it had been paid only $20,000 of this amount, and that it was entitled to recover the difference, $24,760, in quantum meruit. The trial court agreed with Parem.

The record discloses the following. Under the subcontract Parem was obligated to supply gravel for the project. Parem obtained gravel as needed from several suppliers, and delivered the material to the site in its trucks. However, Parem did not pay for the gravel at the time it obtained it. Instead, the suppliers presented invoices and were paid under a "joint check" system. Each joint check was drawn by Welch and named two payees, Parem and one of the suppliers. Welch employed this system in order to ensure that its subcontractors paid their suppliers, thus avoiding liens. Welch insisted that any materials that Parem bought be paid for by joint check. Parem admitted that it had never expended any of its own funds in obtaining gravel. Moreover, Welch introduced evidence that it had paid Parem's suppliers the remaining amounts owed them after Parem broke the contract.

■ In these circumstances, Parem could not recover in quantum meruit for the value of the gravel it left at the site. Welch cannot be made to pay twice for the same material. We hold that the trial court clearly erred in awarding Parem the full value of the delivered gravel.

■ Parem was entitled, however, to recover the reasonable value of the *services* it provided in delivering the gravel. It is not clear what portion of the claimed $24,760 related to these services. Accordingly, we remand for a new trial limited to the issues of Welch's damages, if any, and Parem's damages in quantum meruit.

*Reversed and remanded.*

All concurred.