Strafford
No. 87-085

## Robert E. Tardiff, Inc.

v.

## Twin Oaks Realty Trust and
## Michael P. Pandelena & Charles P. Garabedian, Trustees

July 25, 1988

*Wescott, Millham & Dyer*, of Laconia (*Gary P. Westergren* on the brief and orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief and orally), for the defendants.

JOHNSON, J.   The defendants, Twin Oaks Realty Trust and its trustees, Michael P. Pandelena and Charles P. Garabedian (hereinafter Twin Oaks), appeal the decision of the Trial Court (*Temple*, J.), pursuant to the recommendation of a Master (*R. Peter Shapiro*, Esq.), denying them compensatory damages for the carrying costs attributable to the plaintiff's tardiness in completing the construction of twenty-four condominium units owned by Twin Oaks. The master found that such costs were offset by the increase that had occurred in the fair market value of the condominiums between the completion date stipulated in the parties' contract and the date on which they were actually completed. We reverse and remand.

On May 13, 1985, the plaintiff, Robert E. Tardiff, Inc. (Tardiff), and Twin Oaks entered into a contract for the construction of twenty-four condominium units in Rochester. This project represented the second phase of Cedar Brook Village Condominium Development. The contract called for the construction of four six-unit buildings at a base price of $876,000; it also provided that time is "of the essence" and that "[t]he Contractor shall exercise its best efforts to have the work completed by September 15, 1985."

On September 15, 1985, Tardiff had not substantially performed its obligations under the contract, but continued to work on the project. Indeed, after a meeting with the Twin Oaks trustees late in October, 1985, Tardiff proposed a revised schedule for completion of the project that anticipated that two buildings would be finished by November 8, 1985, another by November 15, and the final one by December 6.

Tardiff did not meet these deadlines, yet it continued working into February, 1986, and the project remained unfinished on February 15. During a February 15 meeting at the construction site between Robert Tardiff, Michael Pandelena and Charles Garabedian, Pandelena and Garabedian informed Mr. Tardiff that they were not satisfied with the progress of his work. They also informed Mr. Tardiff that they were not satisfied with his

assurances that the project could be completed within two weeks, and that they planned to hire another contractor to complete the project.

In a letter dated February 24, 1986, Twin Oaks ordered Tardiff, Inc. to cease working on the project, claiming the contractor had neither seasonably completed its work nor satisfactorily performed the tasks which it had completed. Twin Oaks subsequently secured another contractor to correct and complete the work performed by Tardiff, and the substitute contractor completed the project in June, 1986.

In a letter dated February 27, 1986, Tardiff informed Twin Oaks that Tardiff was terminating the contract that the parties had signed in May, 1985, on the ground that Twin Oaks had not paid Tardiff for the work which the latter had performed pursuant to that contract. Tardiff then brought an action against Twin Oaks, seeking damages of $234,764.12 stemming from the alleged breach of contract by Twin Oaks.

Twin Oaks responded to Tardiff's action by filing a counterclaim that alleged that Tardiff had breached the contract by failing to complete its work in a timely and proper fashion and asserted that Twin Oaks was entitled to recover for all the losses that it had incurred as a result of Tardiff's breach. The counterclaim asserted that Twin Oaks was entitled to compensatory damages of $119,442.70, to cover the interest and other carrying costs incurred by Twin Oaks during the nine-month delay in the completion of the project that resulted from Tardiff's breach.

The master found that Tardiff materially breached the contract by failing to perform its contractual obligations in a proper and timely fashion. The master did not find, although he was requested to do so by Tardiff, that Twin Oaks had breached the contract by failing to make timely payments to Tardiff. Nonetheless, the court below awarded Tardiff net damages of $114,719.59, a figure that was reached by deducting $86,391.32 from the balance otherwise due, representing the cost to Twin Oaks of completing the condominiums.

The court did not award Twin Oaks the compensatory damages that Twin Oaks sought, despite the court's determination that: (1) the delay in the project's completion was 60% attributable to Tardiff; and (2) the damages attributable to Tardiff were foreseeable and within the contemplation of the parties. The denial of compensatory damages was based on the fact that an increase had occurred in the fair market value of the condominium units

between September, 1985, and June, 1986. The court concluded that, because of this increase, Twin Oaks had not demonstrated that it had incurred a "loss of profit" as a result of the nine-month delay in the completion of the condominiums. Therefore, Twin Oaks had failed to meet its burden of proof regarding its entitlement to compensatory damages. Twin Oaks appeals the denial of compensatory damages and claims entitlement to 60% of its carrying costs of $119,442.70, or $71,665.62.

Twin Oaks argues that the master erred in concluding that a substantial increase in the market values and/or the prices of the units at Cedar Brook Village occurred between September, 1985, and June, 1986. We agree. Although the price of any unit that was contracted for prior to the completion of construction was set at $59,900, no unit was, in fact, sold at this preconstruction price. Upon the completion of the twenty-four units, which was originally scheduled for September, 1985, their prices would range from $64,900 to $69,900. Mr. Thibeault testified that he sold the first unit, which was under contract in the fall of 1985 but was not transferred until the fall of 1986, for $65,000.

Tardiff argues that the master's finding that the units at Cedar Brook Village increased in value between September, 1985, and June, 1986, is supported by the evidence. Tardiff points out that Twin Oaks trustee Charles Garabedian testified that the prices of the various units increased from the original figure of $59,900 to $64,000, $69,000 and $73,000, respectively. Tardiff also points out that James Thibeault, the real estate agent for Twin Oaks, testified that the original, "preconstruction" price for each of the twenty-four units was $59,900, but that in September, 1985, the prices were raised to between $64,900 and $69,900, and that between September, 1985, and the spring of 1986, the prices were raised again, to as high as $74,900.

By December, 1986, when the trial was held, eight units remained for sale. Mr. Garabedian testified that the units in Buildings 1 and 2 were still priced at approximately $64,000, those in Building 10 were still priced in the $69,000 range, and those in Building 9 were priced in the $72,000 range. Indeed, the master's report lists these prices as the prices which were current in the spring and early summer of 1986 when the parties concluded their business relationship.

Mr. Garabedian's testimony and the master's own report indicate that, instead of increasing substantially between September, 1985, and June, 1986, the prices of the Cedar Brook Village condomini-

ums remained largely stable between those dates. The $59,900 figure is not reliable because it was a preconstruction price and, further, none of the units was sold at that price. In September, 1985, the prices were set between $64,900 and $69,900; the bulk of the units, including those in Buildings 1, 2, and 10, remained in that price range, not only in the spring and summer of 1986, but even in December of 1986.

■ Tardiff nonetheless maintains that the master correctly found that the compensatory damages that Twin Oaks sought amounted to a claim for lost profits and that such a claim cannot be measured merely in terms of the additional expenses that will reduce such profits, but rather, must be measured in the light of any attending increase in gross revenues. We disagree. The damages that Twin Oaks seeks as compensation for Tardiff's delay in completing construction of the condominiums do not represent a claim for lost profits. Indeed, Twin Oaks did not make a claim for lost profits at trial, nor does it make such a claim on appeal. The damages that Twin Oaks seeks represent the carrying costs (*e.g.*, interest, taxes, insurance and utility bills) that were a part of the expense of completing the work that Tardiff failed to complete satisfactorily and on time.

■■ This court has held that "'consequential damages that "could have been reasonably anticipated by the parties as likely to be caused by the defendant's breach"' are properly awarded to the non-breaching party in a contract action." *Martin v. Phillips*, 122 N.H. 34, 37, 440 A.2d 1124, 1125–26 (1982) (quoting *Zareas v. Smith*, 119 N.H. 534, 538, 404 A.2d 599, 601 (1979), itself quoting *Hurd v. Dunsmore*, 63 N.H. 171, 174 (1884)). Further, we have held that "[t]he goal of damages in actions for breach of contract is to put '"the non-breaching party in the same position it would have been in"' if the contract had been fully performed." *Lahey v. Shaw*, 123 N.H. 648, 651, 466 A.2d 911, 914 (1983) (quoting *Martin v. Phillips supra*, itself quoting *Marcou Constr. Co. v. Tinkham Indus. & Dev. Corp.*, 117 N.H. 297, 299, 371 A.2d 1187, 1188 (1977)). Twin Oaks's carrying costs are consequential damages subject to these rules.

The master found that Tardiff had defaulted and neglected to carry out its work in accordance with the terms of the contract, and that Twin Oaks had rightfully terminated the contract. The master stated: "The Defendants [Twin Oaks] were justified in terminating the contract because the Plaintiff [Tardiff] did not

perform its obligations seasonably and in a workmanlike manner." He specifically found that "the Plaintiff, Robert E. Tardiff, Inc. breached the subject contract and the Defendant, Twin Oak (sic) Realty Trust properly terminated same." The master's finding convinces us that Twin Oaks is entitled to deduct from its debt to Tardiff not only the labor and materials costs of finishing the work ($86,391.32), which the court below granted, but also at least a portion of the $71,665.62 in carrying costs that the court denied.

Tardiff mistakenly relies upon *Zareas v. Smith supra* when it argues that the increase that occurred in the value of the condominium units between September, 1985 and June, 1986, should be set off against the delay damages to which Twin Oaks is entitled. Indeed, *Zareas* supports Twin Oaks's position, not Tardiff's. The plaintiff seller in *Zareas* sought damages for lost profits resulting from an aborted purchase and sale of real estate. The purchase and sale agreement in *Zareas* did not specify a closing date, nor did it provide for any apportionment of expenses such as taxes and interest. The seller in that case possessed improved real estate that was fully usable for rents and profits. In light of these circumstances, we concluded that:

> "[a]t most, the seller's actual damage would be his net loss, the difference between the expenses of ownership and the benefit that one would reasonably expect to derive from the property under prudent management. The plaintiff cannot shift to the defendant any loss resulting from his own failure to make the most productive possible use of the property."

*Id.* at 538, 404 A.2d at 602 (citation omitted). We also determined that "[r]ecovery will not be permitted of damages which could have been 'avoided by reasonable effort without undue risk, expense, or humiliation.'" *Id.* at 538–39, 404 A.2d at 602 (citing *Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 448, 374 A.2d 929, 934 (1977)).

In this case, however, the contract between the parties specified that time was of the essence in completing the condominium units. Moreover, the buildings, in their unfinished state, were not usable by the owner to generate rents or profits during the period of delay that resulted from Tardiff's breach. Unlike in *Zareas*, then, the property owner in this case, Twin Oaks, is entitled to recover the expense of completing the project, and that recovery should not be discounted by the amount of any benefits received during the delay,

because the property in its unfinished state did not produce any income for Twin Oaks.

Nevertheless, Twin Oaks, as one who seeks damages, has the burden of proving the extent and amount of those damages. If there had been no delay in Tardiff's performance, but Twin Oaks had nevertheless been unable to sell any condominiums because of an unfavorable real estate market, Twin Oaks would have had to bear its carrying costs. In that case, Tardiff's delay could not be treated as having caused Twin Oaks to bear any extra carrying costs. However, because Twin Oaks argues that Tardiff's delay prevented Twin Oaks from selling any condominiums, Twin Oaks must prove that the $71,665.52 in carrying costs that it seeks resulted from Tardiff's failure to perform in a timely manner. "It is general law that one who claims damages has the burden of proof; he must, by a preponderance of the evidence, show that the damages he seeks were caused by the alleged wrongful act and he must show the extent and amount of such damages." *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977) (citing 22 Am. Jur. 2d *Damages* § 296, at 394); *see also Whitehouse v. Rytman*, 122 N.H. 777, 780, 451 A.2d 370, 372 (1982); *Hangar One, Inc. v. Davis Assoc's, Inc.*, 121 N.H. 586, 590, 431 A.2d 792, 795 (1981); *Progressive Survey, Inc. v. Pearson*, 120 N.H. 58, 60, 410 A.2d 1123, 1125 (1980). "The party seeking to recover must convince the court that the damages sought represent charges which were justly and fairly incurred. *Plymouth Village Fire Dist. v. New Amsterdam Cas. Co.*, 130 F. Supp. 798 (D.N.H. 1955). It is not incumbent on the trier of fact to accept the damage schedule at face value. *Berke v. Griffin*, 116 N.H. 760, 367 A.2d 583 (1976)." *Grant v. Newton supra*. Damages, however, need not be proven with absolute certainty. *Skandinavia, Inc. v. Cormier*, 128 N.H. 215, 222, 514 A.2d 1250, 1255 (1986); *Dunlop v. Daigle*, 122 N.H. 295, 300, 444 A.2d 519, 522 (1982).

Twin Oaks has the burden of proving what portion of the $119,442.70 in carrying costs that it incurred between September, 1985 and June, 1986, in completing the work on the Cedar Brook Village Condominiums, would not have been incurred but for Tardiff's delay. It may then recover 60% of that amount, which the court should deduct from the $114,719.59 verdict for Tardiff. Because the master apparently failed to consider these alleged damages, the case is remanded in order that the master may

680

consider whether Twin Oaks is entitled to part or all of the damages it claims. *See Whitehouse v. Rytman, supra* at 780–81.

*Reversed in part and remanded for further proceedings consistent with this opinion.*

All concurred.