Hillsborough
No. 90-312

BRANT C. WRIGHT AND NANCY J. WRIGHT

v.

ELEANOR DUNN

October 4, 1991

*Seufert Professional Association*, of Franklin (*Christopher J. Seufert* on the brief), and *Robert L. Thompson*, of Concord, orally, for the plaintiffs.

*David Woodbury*, of Bedford, by brief and orally, for the defendant.

HORTON, J. The plaintiffs appeal from the Superior Court's (*Hampsey*, J.) denial of their motion for additur or, in the alterna-

tive, for a new trial in their consolidated negligence actions against the defendant. The plaintiffs assert that the court abused its discretion in denying the motion after the jury chose to award no damages, although the defendant had stipulated to liability. We reverse the denial of the motion and remand.

The plaintiffs brought this action after a collision between the defendant's vehicle and Mr. Wright's pickup truck on January 22, 1985. The parties stipulated that the accident was caused by the defendant's failure to yield the right-of-way, and that Mr. Wright was not at fault for the accident. Damages to Mr. Wright's automobile were not at issue in this suit. The issues for jury consideration were alleged damages for personal injuries; namely, medical bills of $5,662.30 and his lost past and future wages of over $400,000, and his wife's loss of consortium.

The main elements of Mr. Wright's injury claim were back and neck injuries. The defendant contested the extent of these injuries on the dual bases that Mr. Wright suffered from a pre-existing arthritic condition and that the alleged injuries resulted predominantly from a second accident, which occurred five months later. In support of his injury claim, the plaintiff presented videotaped depositions from three doctors and a transcript of the deposition of a fourth.

Dr. Christopher Lynch's testimony showed that he first met with Mr. Wright more than two years after the accident. His diagnosis was that Mr. Wright suffered from degenerative arthritis and degenerative disc disease of the spine, and that the accident on January 22, 1985, in all probability did accelerate the symptoms of the arthritic condition. Although not forceful in all of his conclusions, Dr. Lynch asserted that Mr. Wright's current injuries could have been caused in part from the accident involving the defendant.

Dr. William Kirmes' deposition revealed that he began seeing Mr. Wright on March 26, 1985, and that Mr. Wright complained of back and neck pain as well as headaches. This doctor, too, reached the conclusion that the January accident aggravated the pre-existing arthritic condition. He conceded that his conclusion as to the causation was based on Mr. Wright's representation to him that he had suffered no prior symptoms. Dr. Kirmes stated that other factors could have resulted in the symptoms experienced by Mr. Wright. He testified that the injuries from the second accident were to the same area as those of the first accident, and seemed to aggravate the injuries.

The plaintiffs introduced the deposition of Dr. Kenneth Morrison, a chiropractor who treated Mr. Wright both before and after his January accident. He testified that he treated Mr. Wright twice in 1976

for a misaligned pelvis and once in 1978 for trouble with his left shoulder. He also indicated that the January accident was the cause of Mr. Wright's injuries.

Finally, Mr. Wright introduced the deposition of Dr. Donald Ettelson. He first met with Mr. Wright on September 1, 1988, and based his evaluation on the reports submitted by the other doctors. According to Doctor Ettelson, Mr. Wright suffered from pre-existing "significant degenerative disease." He reached the conclusion that the January accident had caused Mr. Wright's arthritic symptoms to manifest themselves. His conclusion was based on Mr. Wright's medical history that he had experienced no neck or back pain prior to the January accident. Under cross-examination, he conceded that he could not be certain to what extent the January accident, as compared to the pre-existing condition, contributed to Mr. Wright's present condition. In his testimony he concluded that the January accident "probably" and "more than likely" caused Mr. Wright's injuries.

Mr. Wright himself testified about the accident and his injuries. His testimony indicated that he had suffered no major symptoms of the arthritic condition until the January accident. During the accident he was thrown about inside his truck, and twisted his back. The force of the accident shattered all of the windows of the defendant's car. He claimed that immediately after the accident he experienced neck and back pain, which worsened the next day. On both the day of the accident and the following day, he was treated by Dr. Morrison and incurred medical treatment costs. He testified that the onset of symptoms between the January accident at issue here and the May accident caused him to miss work and experience some pain. Finally, based upon Dr. Lynch's recommendation, he left his work in 1987, because of the pain in his neck and back.

In support of his lost earnings claim, Mr. Wright presented the testimony of Deborah Jean Veatch, a rehabilitation consultant and human resource planner. In her analysis, Mr. Wright's incapacity would result in lost future earnings of between $321,996 and $493,841, and lost past wages computed to be between $94,704 and $100,487.

Before the trial, both parties agreed to stipulate "that Brant C. Wright was not at fault for the accident and that Eleanor Dunn was at fault and that the defendant concedes the issue of liability and elects to try the case on the issue of damages only." After deliberating, the jury returned a verdict "for the defendant." The judge then sent a question to the jury that "since liability was conceded at the

outset, would it be more correct to state that you have made a finding . . . for the plaintiffs but choose to award no damages against the defendant?" The jury responded in writing that "we choose to award no damages."

Mr. Wright carried the burden of establishing damages and proving that they were caused by the accident involving Mrs. Dunn. *See Robert E. Tardiff, Inc. v. Twin Oaks Realty Trust*, 130 N.H. 673, 679, 546 A.2d 1062, 1065 (1988). Evidence from four doctors was admitted, which showed, with varying degrees of certainty, that based upon Mr. Wright's medical history, the combination of the two accidents caused Mr. Wright to experience symptoms from his osteoarthritis. Each doctor offered his opinion that the January accident caused some symptoms. None of the doctors, however, was able to apportion the contribution of each of the two accidents to Mr. Wright's current symptoms. The defendant presented no case-in-chief.

■■ At the outset, we place no significance upon the form in which the jury verdict was returned. Recovery on an action for negligence requires that there be a duty and a breach thereof, with this breach causing damages. *Smith v. Cote*, 128 N.H. 231, 240, 513 A.2d 341, 346 (1986). A stipulation of fault or liability in a motor vehicle liability case concedes merely the duty and breach elements (including causation of the accident). Absent a finding of damages and their legal causation from the accident, the verdict may properly be expressed as one "for the defendant."

We address, then, whether the verdict was one which must be characterized as unreasonable. *See Panas v. Harakis*, 129 N.H. 591, 603, 529 A.2d 976, 983 (1987). Incorporated in this standard is the idea that the verdict was so "conclusively against the weight of the evidence" that no reasonable jury could return such a finding. *Id.* Based upon our review of the record, we must conclude that this was the case.

In reviewing the evidence, we have sought to find a consistent theory upon which the jury could have reached its verdict. The defense contends on appeal that the jury must have concluded that the January accident was not a "substantial cause" of Mr. Wright's injuries. The defense further maintains that because the doctors reached their conclusions as to causation based upon Mr. Wright's stated history of being asymptomatic up to the time of the accident, these opinions were defeated by the evidence that Mr. Wright was treated in 1976 and 1978. We disagree.

First, the defendant apparently recognized the limitation of this evidence, which was in the form of one offhanded statement of Mr. Wright's medical history by Dr. Morrison. The defendant's attorney neither inquired further into this statement nor argued it to the jury. Second, the prior treatment was not to the same area which was allegedly injured in this accident. The treatment received in 1976 was for a misaligned pelvis, and the treatment in 1978 was for trouble with Mr. Wright's left shoulder, while the injuries for which he now seeks damages were, in part, to a cervical area of the spine. There was no contention that he was treated for this prior to his January accident.

Neither can we take seriously the defendant's contention that the jury found no causal connection between the January accident and Mr. Wright's symptoms. The defendant did not assert this defense at trial, rather taking the position that, although the January accident caused some injuries, these were almost healed before the May accident. The defendant's attorney did not vigorously cross-examine Mr. Wright, and cannot be said to have sought, or elicited, any damaging statements concerning the causation of the injuries by the January accident.

The defense strategy can best be seen through various concessions made during closing argument. On at least three separate occasions, the defendant's attorney accepted the establishment of causation of damages.

> "[O]n the issue of causation and you have . . . Plaintiff's Exhibit 9, which is a bound volume of medical expenses containing summaries and copies of bills and so on. And as you go through this, you're going to have to think about *causation*. Clearly—and there shouldn't be any doubts about this, we've already said it—*bills that were incurred for medical treatment prior to May 17 of 1985 belong to us*, okay? There's a substantial number of bills that occur after May of 1985, which are up for grabs. Are they related to the arthritis, the underlying disease? Are they related to the May 17th accident? Well, the only thing that we can say about that is if plaintiff wishes to recover from Eleanor Dunn the cost of those things, he has to prove that they're related to Eleanor Dunn. *So much for causation.*"

(Emphasis supplied.) Similarly, his closing argument about Mr. Wright's prior symptoms was as follows:

> "Now, let's talk about what are the fair conclusions. What's fair to come out in this trial? Well, it's fair to state that Mr.

Wright began to have symptoms January 22, 1985; that's the day of this accident. He didn't seem to have any symptoms before that. That's fair, and we've got to own up to it. It is fair to state that his medical care, before May 17, 1985, which was the date of the second accident, is the responsibility of Eleanor Dunn. It is fair to state that Mr. Wright was not completely over the January accident when the May accident came along, even though he was on the way to getting better."

Then, in his argument to the jury, he stated:

"Now, what is fair to do in this case? It would be pretty poor of me to stand here and tell you at the beginning of the case that we are responsible and then come back and say, but we don't owe him anything. Well, of course we do; you know that. But what?"

■ Although these statements were not evidence, they fairly reflect the state of the evidence, and the defendant's theory of the case. This case does not cause us to assess whether a damage award was sufficient. *See Lavoie v. Blake*, 106 N.H. 347, 349, 211 A.2d 414, 415 (1965). We need not measure what damages were appropriate, but have the simpler task of assessing whether *any* damages were due. The plaintiffs presented ample evidence that some quantum of damage resulted from the accident. The defendant did not seriously contest this, or make any attempt to call this into question. Finally, the defendant's attorney conceded his client's responsibility for some of the damages. From the record, we can determine that Mr. Wright was at least entitled to some recovery for his reasonably incurred medical expenses during the period up to the second accident. Based on the foregoing, no reasonable jury could conclude that no damages were required to be paid.

A reversal of this case requires a new trial, unless the defendant agrees to an additur. *Belanger v. Teague*, 126 N.H. 110, 111, 490 A.2d 772, 772 (1985). In this case, the defendant has agreed that additur would be preferable. Therefore we remand to the trial court to consider concluding this case by ordering an additur in an amount it deems reasonable. If, in the discretion of the trial court, an additur cannot be properly determined, a new jury shall be impaneled for a trial to determine damages.

*Reversed and remanded.*

All concurred.