Rockingham
No. 2012-496

ROBERT AUDETTE & a.

v.

SUZYNNE D. CUMMINGS & a.

Argued: September 12, 2013
Opinion Issued: December 24, 2013

*Casassa and Ryan*, of Hampton (*Daniel R. Hartley* on the brief and orally), for the plaintiffs.

*Law Offices of Peter E. Hutchins, PLLC*, of Manchester (*Peter E. Hutchins* on the brief and orally), for the defendants.

LYNN, J. The defendants, Suzynne D. Cummings (Cummings) and S.D. Cummings & Co., PC, appeal a final order of the Superior Court (*McHugh*, J.) awarding $44,403 to the plaintiffs, Robert Audette (Audette) and his company, H&S Construction Services, LLC (H&S), for breach of contract. We affirm.

I

The trial court found the following facts. Beginning in 1999, the defendants provided various accounting and business services to Audette and his then-partner, Paul Fogarty, including helping them to start their construction business partnership, as well as preparing tax returns for both the business and Audette and Fogarty personally. In 2007, the defendants assisted Audette and Fogarty in dissolving their partnership, including drafting a dissolution agreement and serving as an intermediary between the parties.

In February and March 2008, H&S performed framing work on a house in Kingston (the property). On this project, H&S was a subcontractor of a general contractor, Ledge Rock Construction, LLC (Ledge Rock), owned by Peter Rizzo, for whom the plaintiffs had completed between twenty-five and thirty framing jobs since 1999. Ledge Rock owned the property and was constructing the house for Michael and Karen Greene, who were to purchase the property upon completion. In early March, the plaintiffs were

informed that the Town of Kingston had issued a cease and desist order, halting construction on the property. By that time, H&S had completed approximately ninety-five percent of its work on the property and was owed $44,403.

Shortly thereafter, during a meeting regarding his taxes, Audette asked Cummings to recommend an attorney to place a mechanic's lien on the property. Cummings responded that she could perform the work and drafted a Representation Letter. The Representation Letter, dated March 10, 2008, set forth a number of services that the defendants would provide with regard to collecting the money owed to H&S for its work on the property, including:

> 3. Communicate with all pertinent parties in order to attempt to collect the monies due you without the intervention of the Court systems.
>
> 4. Prepare all documents necessary to secure your claim for services rendered and monies due you and your company. This will included, [sic] but not limited to preparation of all applications for a mechanic[']s lien, Court petitions and applicable municipality forms.
>
> 5. Define all terms for collection of the monies due, including but not limited to structure agreements, communications both written and verbal, and preparation of mechanic's lien for recording if necessary.

The Representation Letter indicated that the defendants would be paid for their services on an hourly basis. It also acknowledged that Audette had earlier given Cummings his key to the property.

H&S provided Cummings with a final invoice for its work on the property within a week of signing the Representation Letter. Cummings instructed Audette not to have any further contact with Rizzo or the Greenes, and to refer any calls from either party to her. Cummings had previously given Audette a similar instruction not to communicate with Fogarty while advising him during the dissolution of the Audette-Fogarty partnership.

Within a few weeks of executing the Representation Letter, Audette received a call from Rizzo. Rizzo left a voicemail promising to pay Audette if he returned to finish his remaining work on the house. Pursuant to Cummings' direction, Audette immediately notified her, and she said she would contact Rizzo. A few days later, Audette received a call from Michael Greene, whose voicemail confirmed that he had paid Rizzo and that H&S would be paid if it completed its work. Again, Audette immediately informed Cummings of the call and did not return Greene's message.

On October 8, 2008, Audette's wife, Judy Audette, sent Cummings an e-mail asking about the status of the property. Cummings responded by e-mail, stating, "received a call [from] Kingston while I was away so need to return it. Have everything else in motion." Later that day, Cummings wrote in another e-mail to Judy that she was "waiting on a return call from Kingston . . . never ending phone tag." On October 10, Cummings wrote in an e-mail to Judy, "I will keep you posted when I hear on Kingston." On November 18, 2008, Cummings replied to another e-mail from Judy by saying she was "in Court in Kingston right now. Will follow up with you. Keep your fingers crossed." Finally, on May 20, 2009, Cummings e-mailed Judy, "I will make an appointment for next week for Kingston." The plaintiffs understood these e-mails to mean that the defendants had secured a mechanic's lien on the property and had filed a lawsuit on their behalf.

During the summer of 2009, the plaintiffs began having difficulty contacting Cummings. In August, Judy Audette investigated the status of the property and mechanic's lien. After learning that the Greenes had moved into the home, she went to the Rockingham County Registry of Deeds and discovered that a warranty deed had been recorded, dated July 14, 2008, transferring the property from Ledge Rock to the Greenes. No mechanic's lien on the plaintiffs' behalf had been recorded. Because the plaintiffs' 120-day statutory lien had not been timely secured or recorded, it had lapsed in July 2008. RSA 447:2, :9 (2002). Judy continued her attempts to contact Cummings into September, but Cummings failed to respond to her calls or e-mails.

The plaintiffs brought suit against the defendants in November 2009 for breach of contract. At trial, Cummings' testimony conflicted with many of the facts recited above, but the trial court, as fact finder, discounted most of her testimony. The trial court found for the plaintiffs and awarded damages in the amount of $44,403. This appeal followed.

II

"A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." *Lassonde v. Stanton*, 157 N.H. 582, 588 (2008) (quotation omitted). "We will uphold a trial court's ruling in an action for breach of contract unless the decision was made without evidentiary support or was an unsustainable exercise of discretion." *Id.* "A trial court's findings of fact in a breach of contract action are binding upon us unless they are unsupported by the evidence or erroneous as a matter of law." *Id.*

■ "The interpretation of a contract is a question of law, which we review *de novo." Czumak v. N.H. Div. of Developmental Servs.*, 155 N.H. 368, 373 (2007). "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." *Id.* "Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract." *Id.*

On appeal, the defendants argue that the trial court erred in ruling: (1) that the plaintiffs did not fail to mitigate their damages; (2) that the defendants' breach of contract was the legal cause of the plaintiffs' damages; and (3) that expert testimony on the issues of reasonable care or legal causation was not necessary. We address these arguments in turn.

A

First, the defendants argue that the plaintiffs failed to mitigate their damages by: (1) not responding to the telephone calls from Rizzo and Greene asking the plaintiffs to return to the property, finish the job, and collect the monies owed them; and (2) not instituting legal action against Rizzo and/or the Greenes within the statute of limitations. We disagree.

■ The claimant in a breach of contract claim must take such measures to lessen his or her loss as can be effectuated "with reasonable effort and without undue risk." *Coos Lumber Co. v. Builders Supply Co.*, 104 N.H. 404, 408 (1963); *see also Grenier v. Barclay Square Commercial Condo. Owners' Assoc.*, 150 N.H. 111, 119 (2003) ("[A] party seeking damages occasioned by the fault of another must take all reasonable steps to lessen his or her resultant loss."). But the claimant need not do so until the defendant refuses to perform its part of the contract. *Coos Lumber*, 104 N.H. at 408. Put another way, "[t]here is no obligation on a promisee to minimize his damages until he actually knows that he is suffering damages because of a breach of contract by the promisor." *Citizens Nat. Bank v. Hermsdorf*, 96 N.H. 389, 394 (1951). Instead, the promisee "may assume that the promisor will keep his contractual promise." *Id.* Further, "[t]he defendants bear the burden of proving that the plaintiffs failed to mitigate damages." *Grenier*, 150 N.H. at 119; *see also Parem Contracting Corp. v. Welch Const. Co., Inc.*, 128 N.H. 254, 259 (1986) (holding that trial court was not permitted to conclude that damages could have been avoided absent evidence to that effect, and that defendant bore burden of presenting that evidence).

■ The defendants' first mitigation argument fails because the plaintiffs did not learn until August 2009 that the defendants had failed both to

secure the mechanic's lien on the property and to take any action to recover the money owed as promised in the March 2008 Representation Letter. Indeed, the trial court found that the defendants led the plaintiffs to believe that "everything was in motion," meaning that they had secured the mechanic's lien and filed a lawsuit. Based upon his history with Cummings, Audette had every reason to believe Cummings was upholding her end of the bargain. Because the plaintiffs did not know of the defendants' inaction until August 2009, more than a year after the property had been transferred and the statutory mechanic's lien had lapsed, they were not obligated to mitigate their damages before that time. Therefore, Audette's decision in March 2008 to heed Cummings's instructions and not respond to the telephone calls from Rizzo and Greene cannot be considered a failure to mitigate damages.

▮ With respect to the defendants' second argument, regarding the plaintiffs' alleged failure to bring suit against Rizzo and/or the Greenes, counsel for the defendants admitted at oral argument that the plaintiffs had no privity of contract upon which to base a claim against the Greenes. Thus, we need not address further the defendants' argument as to them. As to a potential action against Rizzo and/or Ledge Rock, the plaintiffs offered evidence at trial that Audette in 2009 believed that Ledge Rock was out of business, that Rizzo had no assets, and that Rizzo owed a significant amount of money to creditors. The trial court found that Audette was aware that Rizzo had "hit hard times," that "his whereabouts [were] unknown," and that others had told Audette that Rizzo "owed a lot of money to a lot of people and disappeared." The defendants argue that the plaintiffs failed to prove that the money was uncollectable from Rizzo or Ledge Rock in November 2009, but the plaintiffs had no burden to do so. *See Flanagan v. Prudhomme*, 138 N.H. 561, 575-76 (1994) (holding that defendants failed to carry burden of proof to show that plaintiffs failed to mitigate damages when, among other things, they offered no evidence contradicting the plaintiffs' evidence). The defendants here offered no evidence to show that it was reasonable for the plaintiffs to file an action against Rizzo, whom they believed to be insolvent and whose whereabouts were unknown. For these reasons, we find no error in the trial court's ruling that the plaintiffs did not fail to mitigate their damages.

## B

The defendants next argue that the trial court erred in ruling that their breach of contract was the legal cause of the plaintiffs' damages. They contend that causation is lacking because: (1) the plaintiffs could have collected the full amount of the debt by returning to the job site and completing the work after the telephone calls from Rizzo and Greene; (2)

the plaintiffs failed to establish that it would have been necessary to "obtain" a mechanic's lien to collect the money when Rizzo and Greene had already offered to pay them; (3) the plaintiffs failed to establish that a "mechanic's lien action" would have been successful in procuring repayment of the debt; and (4) the plaintiffs failed to institute legal action against Rizzo or the Greenes. We find none of these arguments persuasive.

■ "The goal of damages in actions for breach of contract is to put the non-breaching party in the same position it would have been in if the contract had been fully performed." *Robert E. Tardiff, Inc. v. Twin Oaks Realty Trust*, 130 N.H. 673, 677 (1988) (quotation omitted). A party claiming damages for breach of contract must show, by a preponderance of the evidence, that the damages were caused by the defendant's alleged wrongful act, as well as the extent and amount of such damages. *Id.* at 679.

■ In this case, the record establishes by a preponderance of the evidence that the defendants caused their damages by failing to perform under the Representation Letter. In the Representation Letter, the defendants promised, in pertinent part, to "[c]ommunicate with all pertinent parties in order to collect the monies due" and "[p]repare all documents necessary to secure [the plaintiffs'] claim for services rendered and monies due [to the plaintiffs] . . . [including] preparation of all applications for a mechanic[']s lien, Court petitions and applicable municipality forms." However, the defendants did none of these things, leading to the lapse of the plaintiffs' statutory mechanic's lien and the loss of the plaintiffs' opportunity to collect the monies owed them, and thereby causing the plaintiffs' damages.

■ The defendants' inaction caused the lapse of the plaintiffs' mechanic's lien. Under RSA 447:2:

> If any person shall, by himself or others, perform labor or furnish materials to the amount of $15 or more for erecting . . . a house or other building . . . other than for a municipality, by virtue of a contract with the owner thereof, he shall have a lien on any material so furnished and on said structure, and on any right of the owner to the lot of land on which it stands.

RSA 447:2 (2002). "[I]t is the provision of labor or materials that creates a mechanic's lien . . . as soon as any work or materials are furnished under the contract, increasing in amount according to the progress of the work until performance is completed." *Daniel v. Hawkeye Funding Ltd. P'ship*, 150 N.H. 581, 583 (2004) (quotations omitted). The lien created by RSA 447:2 continues for 120 days after the services are performed, unless payment for the services is made. RSA 447:9 (2002). A mechanic's lien may

be secured beyond the 120-day period by attachment of the subject property during that period. RSA 447:10 (2002); *see Alex Builders & Sons v. Danley*, 161 N.H. 19, 22-23 (2010).

■ The legislative purpose of this statutory scheme is "to provide for special treatment for mechanic's liens in determining priority status so that laborers could get paid for their services." *Lewis v. Shawmut Bank*, 139 N.H. 50, 52 (1994); *see also* N.H.S. JOUR. 1020 (1971) (comments of Sen. Morrissette). For this reason, mechanic's liens take precedence over all prior claims (except liens for taxes), RSA 447:9; all subsequent lien claims for labor or materials, RSA 447:11 (2002); and construction mortgages, subject to certain exceptions, RSA 447:12-a (2002). This statutory scheme creates an exception to New Hampshire's general "race-notice" rule of priority. *Lewis*, 139 N.H. at 51-52.

If the defendants had properly secured the plaintiffs' mechanic's lien within the 120-day period, Ledge Rock could not have transferred the property to the Greenes by warranty deed — as it did 131 days after Audette gave his key to the property to Cummings — without the plaintiffs' lien first being satisfied. The plaintiffs were not required to prove that the defendants' breach of contract was the sole or exclusive cause of the harm they suffered, but only that the breach was a substantial factor in bringing about their damages. *See Indep. Mechanical Contractors v. Gordon T. Burke & Sons*, 138 N.H. 110, 115 (1993) ("In all cases involving problems of causation and responsibility for harm, a good many factors have united in producing the result. . . . In order to establish liability the plaintiff must [merely] show that the defendant's breach was a substantial factor in causing the injury." (alteration in original) (quotation and citation omitted)). By establishing that the defendants failed to secure the lien — or, indeed, to act at all until purportedly sending a demand letter after the property had already been transferred — the plaintiffs adequately proved that the defendants' breach of contract was a substantial factor in causing their harm.

■ Moreover, the alleged intervening causes proffered by the defendants did not require the trial court to reach a different conclusion. The defendants first assert that the plaintiffs could have been fully compensated simply by returning to the job site as requested by Rizzo and Greene, and that the plaintiffs' failure to do so broke the chain of causation between the defendants' breach and the plaintiffs' damages. However, the evidence showed that Cummings instructed Audette not only to have no contact with Rizzo or the Greenes, but also to refer any calls to her and that she would communicate with them. In light of that evidence, which the trial court

found credible, this argument amounts to a claim that the defendants did not cause the plaintiffs' damages because the plaintiffs acted unreasonably in following the *defendants' own instructions*. On the record before us, we have no difficulty in concluding that the trial court could properly find that the plaintiffs' reliance upon the defendants' instructions was reasonable. In the past, the plaintiffs had relied heavily upon the defendants in myriad business matters, ranging from preparing tax returns to creating and dissolving Audette's business partnership with Fogarty. Cummings had advised Audette in that dissolution not to speak to Fogarty, his friend, saying that she would act as an intermediary between the two. Based upon these prior dealings, as well as the promises contained in the Representation Letter, Audette had every reason to believe that the defendants were performing a similar role here. Communicating with "pertinent parties" would certainly include responding to an offer of payment, and the defendants' failure to make such a communication constituted a failure to perform as promised under the Representation Letter.

In addition, the plaintiffs did not need to show that they could "obtain" a mechanic's lien, as the defendants argue, because the plaintiffs already *had* the lien by virtue of their work on the property at the time the parties signed the Representation Letter. "[T]he contractor 'creates' its own lien by performing the work or furnishing the materials." *Daniel*, 150 N.H. at 583. Thus, the plaintiffs' mechanic's lien existed and could have been secured regardless of any offers to pay by Rizzo or Greene. Indeed, those offers to pay show that in all likelihood the defendants would have been successful in securing the lien on behalf of the plaintiffs within the 120-day period had the defendants performed as promised because Ledge Rock indisputably owed money to the plaintiffs for work on the property. If the defendants had secured the lien, the plaintiffs would have been paid out of the closing proceeds, and the opportunity to collect from Ledge Rock and Rizzo would not have been lost.

The defendants claim that proof of causation failed because the plaintiffs did not institute legal proceedings against Rizzo or the Greenes. This is little more than a rehashing of their mitigation argument, which we have already addressed. The defendants have not cited, nor are we aware of, any authority supporting the proposition that the plaintiffs were required to exhaust collection efforts against Rizzo or the Greenes as a prerequisite to recovery for the defendants' breach of contract. As noted previously, the plaintiffs were required to prove only that the defendants were a substantial factor in causing their damages, not that they were the sole cause of the

damages. *Indep. Mechanical Contractors*, 138 N.H. at 115. In sum, the plaintiffs demonstrated by a preponderance of the evidence that the defendants caused their damages.

C

■■ Finally, the defendants argue that the trial court erred in ruling that expert testimony was not required in order for the plaintiffs to prevail on the issues of liability and causation. "Expert testimony is required where the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Boynton v. Figueroa*, 154 N.H. 592, 601 (2006). "Expert testimony is not required where the subject presented is within the realm of common knowledge and everyday experience." *Id.*

Contrary to the defendants' contention, this was an action for breach of contract, not for negligence or legal malpractice. *Cf. Hawkins v. McGee*, 84 N.H. 114, 115-16 (1929). The issue in this case was whether the defendants had failed without legal excuse to perform as promised in the Representation Letter. *See Lassonde*, 157 N.H. at 588 (finding breach of contract where defendants failed to show legal excuse for not paying under contract). We acknowledge that the defendants did not "guarantee" or otherwise "promise" in the Representation Letter to collect the monies owed to the plaintiffs. However, that fact is immaterial to the issue of whether the defendants breached the contract and caused the plaintiffs' damages.

■■ The plaintiffs alleged that the defendants breached Articles 3, 4, and 5 of the Representation Letter. It is not beyond the ken of the average layperson to determine whether the defendants failed to "[c]ommunicate with all pertinent parties" to collect the money due to the plaintiffs (Article 3), to "[p]repare all documents necessary to secure [plaintiffs'] claim for services rendered and monies due" (Article 4), or to "prepar[e a] mechanic's lien for recording" (Article 5). Whether the defendants performed these tasks was well within the realm of common knowledge and everyday experience. At best, the defendants sent only a single letter to Rizzo and the Greenes on August 8, 2008, unsuccessfully attempted to contact those parties by phone, and spent a year and a half engaged in "never ending phone tag" with the Kingston building inspector to determine whether the Greenes were living on the property. Expert testimony was not necessary for the trial court to determine that this pattern of prolonged delay and inaction breached the defendants' performance obligations pursuant to the Representation Letter.

*Affirmed.*

774

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.